**FAIRBANKS, MORSE & CO. v. CONSOLIDATED FISHERIES CO.**

No. 10381.

United States Court of Appeals Third Circuit.

Argued April 17, 1951.

Filed July 9, 1951.

Leonard J. Schwartz, Philadelphia, Pa. (S. Samuel Arsht, Wilmington, Del., on the brief), for appellant.

James R. Morford, Wilmington, Del. (Morford, Bennethum, Marvel & Cooch, Wilmington, Del. of counsel on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal from an entry of summary judgment by the district court pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Federal jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount.[1]

The first cause of action[2] stated in the complaint is based on 29 promissory notes, in the total amount of $48,140, representing the balance of the purchase price of a diesel engine and generating equipment purchased by defendant from plaintiff. The defense urged upon the trial court is failure of consideration. More specifically, defendant alleges that plaintiff expressly warranted that the equipment would generate and supply electric power in varying quantities up to 1136 kilowatts and that the equipment in fact has failed to conform to such warranty. This alleged breach of warranty is also the basis of a counterclaim seeking damages in the amount of $106,498.

The rights of the parties depend very much on the sales contract entered into on January 8, 1948, a copy of which is attached to defendant's answer. This agreement, formalizing the relationship between the parties, consists of three parts. The first part, denominated the "General Engine Proposal," is the basic contract between the parties, and will be referred to as such. Expressly incorporated into the basic contract are two other documents: the "Standard General Provisions of Diesel Engine Sales" (Standard General Provisions) and "Specification No. One" (Specification). While the basic contract briefly describes the major pieces of equipment which are the subject matter of the contract, a complete list and detailed description of the equipment to be sold is contained only in the Specification. The basic contract states the three collateral warranties which the seller agrees to assume. The only one that need concern us is the warranty that the diesel engine will operate with a certain maximum fuel consumption. This warranty is referred to as the "Guaranties of Duty." The very last paragraph of the basic contract, Paragraph 7, is a disclaimer clause which excludes all warranties, representations or understandings not set forth in full in the basic contract or in the Standard General Provisions or in the Specification.

The Standard General Provisions is a completely printed form, the main function[3] of which is to define in greater detail the three collateral warranties stated in the basic contract. The Standard General Provisions, in Section II C, carefully limits the seller's liability with respect to the Guaranties of Duty by requiring him to promptly request of the seller a test. Upon completion of the test, the purchaser must either give the seller's engineer a written acceptance, or else prompt notice

---

1. Plaintiff is an Illinois corporation, defendant a Delaware corporation.

2. The second cause of action stated in the complaint is on an alleged indebtedness arising out of an open account. We are not concerned with it in this appeal.

3. The Standard General Provisions also provides for the installation of the equipment under the supervision of seller's engineer, and specifies the seller's remedies on default.

of the failure. Section VI of the Standard General Provisions is another disclaimer clause. It purports to limit the seller's liabilities upon any guaranties or warranties to the three collateral warranties mentioned above.

The second document incorporated into the basic contract is the Specification. This consists of two typewritten pages, which list and describe the machinery sold and the component parts. The description of the generator, which is in greater detail than that contained in the basic contract is as follows: "1-1420 KVA-*1136 KW* @ 80% Power Factor, 3 Phase, 60 Cycle, 2400 volt, 3 wire, 720 RPM, 50° Rated Fairbanks Morse Alternator with Sole Plates, Rheostats and Field Discharge Resistor." (Emphasis supplied.)

The reply of plaintiff avers that defendant is precluded from asserting the alleged breach of warranty because defendant gave plaintiff's engineer a written acceptance for the machinery in which defendant's president states that the machinery was operating in a satisfactory manner.

Plaintiff moved for summary judgment on the first cause of action on the basis of the pleadings and an affidavit of plaintiff's engineer which reiterated the allegations in plaintiff's reply with respect to defendant's written acceptance. Defendant presented to the district court a counter-affidavit sworn to by its president, one Hayes, which states that during the test runs the engine threw large quantities of unused oil into the atmosphere through its exhaust. Hayes' explanation of the written acceptance is that plaintiff's engineer had represented to him that the purpose of the receipt or acceptance was merely to show that the job of installation had been completed, and that the company would subsequently supply experienced men to correct any defective operation which might develop. Hayes' affidavit does not allege any complaint by defendant to the engineer with respect to the failure of the equipment to deliver up to 1136 kilowatts. Such notice, however, is alleged in defendant's answer and counterclaim.

On October 25, 1950, the district court filed an opinion, holding that summary judgment should be awarded plaintiff on its first cause of action and on defendant's counterclaim. Before judgment was actually entered in plaintiff's favor, however, defendant filed its motion to amend the answer and counterclaim. The nature of these amendments will be discussed later in this opinion.

On November 20, 1950, the district court denied defendant's motion to amend, and on November 28 an order was entered granting plaintiff's motion for summary judgment as to the first cause of action and as to defendant's counterclaim.

Two allegations of error are presented to us on appeal. First, defendant contends that the district court erred in entering summary judgment for plaintiff. Second, defendant contends that the court erred in denying defendant's petition for leave to amend its answer and counterclaim.

■ A federal court sitting in Delaware in a diversity case is obliged to follow the law of Delaware, including its conflict of laws rules. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 674, 85 L.Ed. 1115. The Delaware courts have held that the construction and validity of a contract are determined by the law of the place of contracting, while matters of proper performance are determined by the law of the place where performance is contemplated. Lams v. F. H. Smith Co., 6 W.W.Harr. 477, 178 A. 651, 105 A.L.R. 646, (Super.Ct., 1935); Canadian Industrial Alcohol Co. v. Nelson, 1936, 8 W.W.Harr. 26, 188 A. 39. Since the equipment was, by the terms of the contract, to be erected in defendant's plant in Delaware under the supervision of plaintiff's engineer, it is clear that Delaware is the place of performance. The record is unclear, however, as to the place of contracting.[4] In the absence of proof,

4. We do not know where the notes were executed, although they are payable at plaintiff's New York office. The sales contract provides that it shall be binding

we shall presume it to be Delaware. See Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 1945, 151 F.2d 784.[5]

The district court was of the opinion that if the term "1136 kilowatts" constituted an implied warranty under Section 14 of the Uniform Sales Act, it was negatived by the disclaimer clauses of the contract. That court was convinced that such descriptive language could not constitute an express warranty. Defendant, on the other hand, argues that plaintiff's undertaking constituted an express warranty within the contemplation of Section 12 of the act, and that the disclaimer clauses have not effectively negatived it. The essential provisions of the two sections are as follows:

Section 12 "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty." 1935 Revised Code of Delaware § 5991.

Section 14 "Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description * * *." Id. at § 5993.

While the Uniform Sales Act is the law of Delaware, we are aware of no Delaware cases which have categorized the legal effect of descriptive language. Courts in other states, in interpreting the act, have labelled descriptive words express warranties in some cases and implied warranties in others.[6] There is strong authority, however, for the proposition that any warranty derived from express language should be considered an express warranty. Since such warranty is based on words which are actually a part of the contract between the parties, it seems most unrealistic to call the obligation implied.[7] The detailed Specification expressly incorporated into this sales contract cannot be termed merely words of general description used for identification only. The Specification states in minutest detail and in technical terms exactly what the seller promised to deliver. It represents positive affirmations of fact, the natural tendency of which is to induce the buyer to purchase. And a jury could assuredly infer that the defendant relied on this detailed Specification. The effect of the district court's interpretation is to render

---

only upon acceptance by plaintiff's local manager, but the record nowhere reveals where this acceptance took place.

5. The Uniform Sales Act has been adopted in all jurisdictions which have had any contact with the subject matter of this action. Neither party has contended that the choice of the applicable law would alter the result with respect to liability for breach of warranty.

6. See Refinery Equipment v. Wickett Refining Co., 5 Cir., 1947, 158 F.2d 710; C. D. Brown & Co. v. Standard Hide Co., 1930, 301 Pa. 543, 152 A. 557; Lumbrazo v. Woodruff, 1931, 256 N.Y. 92, 175 N.E. 525, 75 A.L.R. 1017.

7. Williston states the proposition in this manner: "In modern times, however, all cases are often included under that designation [express warranty] where the seller's warranty is derived from express language, no matter whether the language is in form a promise or a representation." 1 Williston, Sales, § 194 (rev. ed.).

There is no reason why given descriptive words might not conform to the definitions in both § 12 and § 14 of the Uniform Sales Act. This is one of those situations in which a page from history is of more value than a whole volume of apparently logical reasoning. Section 14 of the Uniform Sales Act is almost identical with Section 13 of the English Sale of Goods Act. This corresponding section of the English statute was limited, at least at the time of its enactment, to situations in which the identification of the goods that are the subject matter of the sale depended upon the description. Section 12 was apparently included in the American act to make certain that any affirmation of fact relating to goods (if its tendency is to induce reliance by the buyer, and the buyer does so rely) should be considered a warranty, even though the transaction be not what might technically be called a "sale by description." See id. §§ 223a, 224.

virtually meaningless a very vital part of the contract. Specifications, which are universally defined as a detailed and exact description of the subject matter of the contract,[8] are transformed into rough, superfluous descriptive statements. We cannot agree with such interpretation.

■ Even if the warranty in the Specification be considered express, the district court deemed it to be ineffective because of the disclaimer provisions. If we were convinced that the express warranties contained in the Specification were completely contradicted by the disclaimer clauses, we would have no doubt in resolving the conflict by holding that the former must prevail.[9] Every reasonable rule of construction points in that direction. The rule that a contract is construed strictly against the draftsman [10] would lead us to resolve our doubts in favor of the buyer. Further, it is generally accepted that where printed and typewritten or written provisions conflict, the latter clauses control.[11] The instant case is a most appropriate one for the application of this rule where the conflict, if any, is between the typewritten Specification and the printed disclaimer clauses.

■ A study of the sales contract, however, has convinced us that the apparently contradictory clauses of the contract can be reconciled. Section 7 of the basic contract is one of the two key disclaimer clauses.[12] A reading of the contract as a whole makes it clear that this section is a crucial one to an understanding of the entire contractual scheme.[13] This section excludes all "representations, guaranties, warranties, agreements, or understandings" not fully set forth in the basic contract, or in the Standard General Provisions, or in the Specification. Plaintiff's position is in no way strengthened by this section. In fact, it is an Achilles heel, through which is laid open the fundamental weakness of plaintiff's contention. Only "representations, guaranties, etc." not contained in the Specification are excluded by this section. It thus is obviously contemplated by the draftsman that express warranties may be stated in the Specification, which is essentially the only part of plaintiff's contract that can be made to vary with different buyer requirements.

■ The other important disclaimer clause is Section 6 of the Standard General Provisions.[14] As has been stated

8. 9 C.J., Building and Construction Contracts, §§ 4, 6.

9. The Uniform Sales Act has no provision covering the problem of conflict between express warranties and a disclaimer clause. It is of interest to note that the Uniform Commercial Code, which has just been approved by the American Law Institute for submission to Congress and the state legislatures, expressly provides for this situation. Section 2–316(1) states the following proposition: "If the agreement creates an express warranty, words disclaiming it are inoperative." We think provisions of the Uniform Commercial Code which do not conflict with statute or settled case law are entitled to as much respect and weight as courts have been inclined to give to the various Restatements. It, like the Restatements, has the stamp of approval of a large body of American scholarship.

10. 3 Williston on Contracts § 621 (1936 ed.). It is clear from the record that the sales agreement is a form contract of the plaintiff corporation.

11. Id. § 622.

12. Section 7 of the basic contract states: "This proposal, in duplicate, shall become binding on the Purchaser and the Company when signed by the Purchaser and approved by the local manager of the Company, and shall thereby become the entire and sole agreement of the parties pertaining to the subject matter hereof, mutually *withdrawing, cancelling, or otherwise waiving,* terminating, and excluding any and all oral, written, express, or implied *representations, guaranties, warranties,* agreements, or understandings whatsoever *not set forth in full herein or in the General Provisions or Specifications* made a part hereof as aforesaid." (Emphasis supplied.)

13. This section is the very last one of the basic contract, and immediately following it are the signatures of the parties. Significantly enough, it is in bold type.

14. Section 6 of the Standard General Provisions is as follows: "It is expressly understood and agreed that the Company shall, in nowise be deemed or held to be obligated, liable, or accountable upon or

earlier, this purports to exclude all "guaranties and warranties" except the three collateral warranties already referred to. If the whole contractual scheme is read in its entirety, it appears that the intent expressed in this section must be to exclude only other collateral warranties. It was not the intent of the parties to negative the express warranties inherent in the detailed description of the equipment itself.[15] These two disclaimer clauses should be compared with the utmost of care. Section 6 of the Standard General Provisions excludes only "guaranties and warranties." The scope of its disclaimer is obviously more limited[16] than the broader provisions of Section 7 of the basic contract, which excludes all "representations, guaranties, warranties, agreements, or understandings." But we have already noted that the broader disclaiming language of the latter clause expressly provides that any warranties set forth in full in the Specification are not negatived. Only under this interpretation can reasonable meaning be given to every part of the contract.

■ A second ground for the decision of the district court was that defendant's written acceptance precludes it from asserting any rights for breach of warranty. It is, of course, clear that the parties to a contract may agree that the seller will be discharged from any liability for breach of warranty upon acceptance by the purchaser.[17] Our study of the contract has convinced us, however, that the parties intended that the so-called written acceptance should constitute only a waiver of any rights arising from a breach of the Guaranties of Duty which, as has been stated earlier, is merely a guaranty of economical fuel consumption.

We have already noted that Section II C of the Standard General Provisions contemplates that the seller should hold a test to determine the successful operation of the equipment according to the Guaranties of Duty. The test is limited to that sole purpose. If the fuel consumption of the engine is in conformance with the Guaranties of Duty, then the purchaser is to state in writing that the equipment operated successfully. The acceptance given by defendant, clearly the one contemplated by Section II C, thus can be construed to be only a waiver of any right of action on this particular warranty, i. e., the warranty of economical fuel consumption. No provision is made for a test to determine whether the machinery conforms to the Specification. Hence, we do not think that it was intended that the written acceptance should constitute a waiver of the breach of warranty that the equipment would meet the Specification.

■ The final ground for the district court's order granting summary judgment was that the record showed that the defendant had not given any notice of the failure of the equipment to produce 1136 kilowatts, and thus failed to conform to

---

under any guaranties or warranties, express or implied, statutory, by operation of law, or otherwise, in any manner or form beyond its express agreements relative to the determination of the capacity of each Diesel engine at a factory test, the determination of successful operation of the machinery at a specified test, and the replacement of defective guaranteed parts, all hereinbefore specifically set forth * * * "

15. The parties throughout the Standard General Provisions are thinking in terms of collateral warranties, since one of the main functions of that part of the contract is to define and limit any collateral warranties. There is still a tendency to consider warranties as collateral in form. This was the older view in the law of

sales. See, for example, § 62 of the English Sale of Goods Act which defines a warranty as collateral to the main purpose of such contract. Corpus Juris Secundum, in its chapter on Contracts published in 1939, defines warranties in practially the identical language of the English act. 17 C.J.S., Contracts, § 342.

16. Since this contract comprehends not only the sale, but the installation of the equipment, we may reasonably interpret the contract in the light of contract law generally. For example, building contracts generally do not refer to the promises embodied in specifications as warranties or guaranties.

17. Uniform Sales Act, §§ 49, 71, 1935 Revised Code of Delaware, §§ 6028, 6050.

Section 49 of the Uniform Sales Act. If the district court meant by that statement that defendant's counter-affidavit did not aver that notice was given, then its statement is perfectly correct. But if the district court meant that defendant's pleadings do not allege notice, then its reading of the record has been incorrect. It is clear that both defendant's answer and its counterclaim allege that notice was given to the seller promptly, although the time and manner of such notice is not pleaded.

Plaintiff argues on appeal, however, that the pleadings, considered with the affidavits, make it clear that notice was never really given. The counter-affidavit of defendant's president, alleges that defendant complained to plaintiff's engineer that the engine threw large quantities of unused oil into the atmosphere. Since the counter-affidavit mentioned no complaint about any other defect, plaintiff contends the court can assume that the notice referred to in defendant's pleadings was merely notice as to the engine's propensity to throw out oil.

 Plaintiff's argument is not convincing. The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of fact. Wittlin v. Giacalone, 1946, 81 U.S.App.D.C. 20, 154 F.2d 20. Plaintiff here has not properly shouldered that burden. Whether reasonable notice had been given by defendant was one of the facts placed in issue by defendant's answer and counterclaim. Yet plaintiff did not attempt to show that there was no genuine issue over the question of notice. Defendant's so-called written acceptance is not necessarily inconsistent with either prior or subsequent notice to plaintiff that the equipment did not conform to the Specification, for acceptance under the Sales Act does not preclude the purchaser from bringing an action on the breach of warranty.

The defendant also alleges as error the district court's denial of defendant's motion to amend its answer and counterclaim. The proposed amendments alleged, in effect, that in November and December, 1947, defendant, as a client, consulted plaintiff to obtain engineering advice: plaintiff was asked to survey defendant's requirements for power; plaintiff was to lay out plans for a powerhouse; and plaintiff was to recommend proper equipment. The negligence alleged is negligence in recommending to defendant the equipment now the subject of the sales agreement, in that it is allegedly unable to produce power in amounts up to 1136 kilowatts.

The district court denied defendant's motion to amend because the answer and counterclaim as amended did not, in the opinion of that court, state a good cause of action. The court summarized its view as follows: "This limitation [the disclaimer clause] is broad enough to cover any negligence in performing its obligations under that contract." [94 F.Supp. 311, 320.] A study of the proposed amendments reveals, however, that they do not state a cause of action predicated upon plaintiff's negligence in the performance of the contract. The cause of action stated does not arise from the buyer-seller relationship, but from an alleged relationship of engineer and client which apparently preceded the former status.

 If these allegations are correct, do they state a good cause of action? Defendant relies on the doctrine that one who in the course of his business or profession supplies information for the guidance of others in their business transactions is liable for his negligence. Restatement, Torts, § 552.[18] Whether the above rule would be applied by the *locus delicti* and whether the facts of the instant case properly call for its use here need not be determined, for we are of the opinion that the disclaimer clauses of the sales agreement relieve plaintiff from any liability arising out of negligence in its role as engineer. Paragraph 6 of the basic contract declares that plaintiff shall not be liable in any manner for damages or

18. See International Products Co. v. Erie R. Co., 1927, 244 N.Y. 331, 155 N.E. 662, 56 A.L.R. 1377; Nichols v. Clark, Mac-Mullen & Riley, Inc., 1933, 261 N.Y. 118, 184 N.E. 729.

otherwise with respect to the purpose, suitability, or operation of the machinery beyond its express agreements set forth in the basic contract or expressly incorporated into it. The cause of action contained in the proposed amendments seeks damages for negligently recommending machinery which was not suitable. Such liability thus comes squarely within the all-inclusive language of the disclaimer clause. See Lachman Co. v. Hercules Powder Co., D.C.E.D.Pa.1948, 79 F.Supp. 206. We think the disclaimer clause is broad enough to comprehend even liability arising from any former relationship of engineer and client which may have existed between the parties. If there formerly did exist such a relationship, it was merged into one of buyer and seller. The purchaser, in effect, agreed to give up any rights based on plaintiff's alleged negligent recommendations, and accept, in their place, the express warranties of the contract.

The judgment of the district court will be reversed and the cause remanded for further proceedings in accordance with this opinion.