**UNITED STATES of America,
Plaintiff,**

v.

**The FIRST NATIONAL BANK OF SUN-
BURY and Snyder County Trust
Company, Defendants.**

**Civ. No. 69–434.**

United States District Court,
M. D. Pennsylvania.

March 31, 1970.

Donald G. Balthis, Chief, Morton M.
Fine, Middle Atlantic Office, Antitrust

**376**

Division, Dept. of Justice, Philadelphia, Pa., for plaintiff.

Richard Henry Klein, Sunbury, Pa., Eugene J. Metzger, Metzger & Schwarz, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

The court has before it a motion for summary judgment by the defendants, The First National Bank of Sunbury and Snyder County Trust Company, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The government, plaintiff herein, instituted the within action claiming jurisdiction under Section 15 of the Act of Congress of October 15, 1914, c. 323, 38 Stat. 736, as amended (15 U.S.C. § 25), commonly known as the Clayton Act, and alleging violation of § 7 of the said act, 15 U.S.C. § 18 (1950) (formerly ch. 323, § 7, 38 Stat. 731 (1914)), which provides, in part:

> "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share of the capital * * * of another corporation engaged also in commerce, wherein any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

The government alleges that the effect of the proposed merger between the two defendant banks may be to "substantially lessen competition" in a relevant line of commerce (commercial banking) in the "Susquehanna area" which is defined as the 4-county area consisting of Snyder, Northumberland, Union, and Montour counties or, in the alternative, the "Sunbury-Selinsgrove section of the Susquehanna Area," which is defined as "the area within five miles of the towns of either Sunbury or Selinsgrove."

Within the Susquehanna area, First National, with total resources of approximately 34.8 million dollars, total deposits of 29.0 million dollars, and net loans and discounts of 18.2 million dol-

lars, holds approximately 11% of the total deposits and 15% of the I.P.C. demand deposits, and is the largest commercial bank headquartered in the respective 4-county area. Snyder County Trust, with total resources of 19.1 million dollars, total deposits of 17.6 million dollars, and net loans and discounts of 11.4 million dollars, represents the third largest headquartered bank of the Susquehanna area with 6% of total deposits, and about 6% of the I.P.C. demand deposits.

Comparatively, in the Sunbury-Selinsgrove section of the "Susquehanna Area," First National holds the largest share of deposits with about 44% of the total deposits in that area, and Snyder County Trust holds the second largest share with approximately 25% of the deposits.

The government contends that the relative size of the merged banks alone would create a bank three times as large as the next largest bank in Northumberland County; twice as large as the next largest bank in Snyder County; three times as large as the next largest bank in Montour County, and four times as large as the next largest bank in Union County.

The area involved herein is admittedly rural with population figures as of the 1960 census showing Union County with a population of 25,656; Snyder County, 25,942; Northumberland County, 104,-138; and Montour County, 16,730. Commonwealth of Pennsylvania, Department of Property and Supplies, Vol. 99 *The Pennsylvania Manual* (1969).

For the purposes of the motion for summary judgment, defendants have conceded all issues except that they contend that:

(1) Defendants First National Bank and Snyder County Trust Company are not substantial competitors in Union, Northumberland, and Montour counties.

(2) The remaining geographic areas to which the complaint relates, Snyder County and the twin 5-mile circle of Sunbury and Selins-

grove are not economically, demographically, and geographically significant to constitute a "section of the country" within the intendment of § 7.

Defendants have submitted to the court for consideration affidavits consisting of the deposit breakdowns of Snyder County Trust Company and its accounts with Northumberland County addresses, including names and addresses; the deposit and loan breakdown of Snyder County Trust Company within the "Susquehanna Area"; the deposit and loan breakdown of First National Bank within the "Susquehanna Area"; and two affidavits by authorized representatives of the defendants instructing their counsel to enter into a binding stipulation to abandon the merger if the court rules against their motion for summary judgment.

The defendants have asked the court to rule as a matter of law that the defendants are not substantial competitors in the "Susquehanna Area," and therefore the merger would not have a substantial tendency to lessen competition.

Upon a motion for summary judgment, it is the function of the court to determine whether there is an issue of material fact to be tried, not to decide issues of fact. Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016 (C.A.3d 1942). It is incumbent upon the moving party positively and clearly to demonstrate that there is no genuine issue of fact, and any doubt as to the existence of such issue must be resolved against the moving party. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817 (C.A.3d 1951); 2361 State Corp. v. Sealy, Inc., 402 F.2d 370 (C.A.7th 1968).

The question, therefore, is whether the affidavits and pleadings submitted by defendants, the moving parties herein, establish that no material issue of fact exists.

The ultimate question under § 7 is whether the effect of the merger "may be substantially to lessen competi-tion" in the relevant market. Defendants contend that the respective banks' current shares of the "Susquehanna Area" market require a summary judgment in their favor. We cannot agree.

The tests of whether the effect of a proposed merger "may be substantially to lessen competition" are elusive, not readily ascertainable or capable of being precisely elucidated due to the varying market structures and circumstances of the individual cases. Nevertheless, it is apparent that Congress intended to arrest mergers with a potentially anti-competitive effect in their incipiency. United States v. Brown Shoe, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). The court is under an obligation not only to appraise the immediate effect of the merger, but also to predict its impact upon competitive conditions in the future. United States v. Phila. Natl. Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1964). This prediction may only be made following an informed and comprehensive study of the relevant market, relating the structure of the market to the characteristics of the relevant industry. United States v. Phila. Natl. Bank, *supra*.

The record before the court indicates only the volume and geographical sources of the business being conducted by the respective banks. The dollar volume share of business of these banks is only one of the factors in determining whether the effect of the merger may be "substantially to lessen competition." A. G. Spalding & Bros., Inc. v. F.T.C., 301 F.2d 585 (C.A.3d 1962). Among other factors to be considered are the history of tendency of the industry toward concentration: United States v. Von's Grocery Co., 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed. 2d 555 (1966); the physical, economic, and legal barriers preventing other potential competitors' entry into the relevant market: United States v. First Natl. Bank & Trust Co. of Lexington, et al., 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed. 2d 1 (1964); United States v. Provident Natl. Bank, 280 F.Supp. 1 (D.C.Pa. 1968); United States v. Manufacturers

**378**

Hanover Trust Co., 240 F.Supp. 867 (D.C.N.Y.1965); and a study of the relative economic scales of the customer: United States v. Phila. Natl. Bank, *supra.*

■ The court finds that the record is devoid of many of the determinative findings necessary to ascertain or predict the probable impact of the proposed merger and finds that the defendants have not met their burden of showing that no material fact issue exists upon motion for summary judgment in order for the court to conclusively rule as a matter of law that the merger would not have a substantial tendency to lessen competition.

With respect to the defendants' argument that the "Sunbury-Selinsgrove section of the Susquehanna Area" and Snyder County are not "sections of the country within the intendment of the Clayton Act"; the court cannot, on this record, make any determination thereof.

■ Many of the factors utilized in determining whether or not there may be a substantial lessening of competition are interrelated with those in determining a "section of the country" under § 7 and in consequence they do not appear in the record. In addition, the court is guided by the decision in United States v. Pabst Brewing Co., 384 U.S. 546, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966), in which the issue of an appropriate "section of the country" has been relegated to a subsidiary position and not grounds for dismissal of a case. United States v. Provident Natl. Bank, *supra.*

■ A summary judgment is not an appropriate vehicle in Clayton § 7 antitrust cases unless all of the relevant data appears on the record either through affidavits, interrogatories, or the pleadings. White Motor Co., v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

■ The intent of the Congress in its enactment of the Clayton Act was for the protection of the small businessman and the consumer through the arrest of mergers which may have a potentially anti-competitive effect. In a case involving both the public and highly complex factual and legal issues, the court finds the record too scant without the further benefit of discovery and trial to rule as a matter of law that the proposed merger is, or is not in violation of § 7.

Defendants' motion for summary judgment will be denied.