Jerome J. WEINGARTEN and Dorothy T. Weingarten, his wife and Milton J. Carter and Patricia E. Carter

v.

FIRST MORTGAGE CO. OF PA. and Victor Henry Associates, Inc.

Civ. A. No. 77–3088.

United States District Court, E. D. Pennsylvania.

March 2, 1979.

Walter D. Campbell, Levittown, Pa., for plaintiffs.

Nathan L. Posner, E. Gerald Donnelly, Jr., Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for First Mortgage.

Louis Podel, Harold Levy Associates, Philadelphia, Pa., for Victor Henry.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

 This is an action brought by the plaintiffs pursuant to the Truth in Lending Act of 1968 (TIL), 15 U.S.C. § 1601 *et seq.* In their eight-count complaint the plaintiffs seek rescission of a loan agreement and damages in connection with a loan made by defendant First Mortgage Co. of Pa. (First Mortgage) and arranged by Victor Henry Associates, Inc. (Victor Henry). In counts one through four, the plaintiffs allege that both defendants violated the TIL and in counts five through eight, the plaintiffs allege that both defendants breached their contractual agreement. Defendants filed motions for summary judgment which the Court denied by Order dated June 28, 1978 on the ground that there were genuine issues of material fact. The Court reconsidered its Order at defendants' request and on July 12, 1978 reaffirmed its Order denying summary judgment. Defendant First Mortgage, after deposing the plaintiffs and the two other guarantors on the loan, filed another motion for summary judgment, the summary judgment motion which is presently before this Court. After a review of the record, including the depositions of the plaintiffs and the other two guarantors on the loan, the Court finds that, on the record as it now exists, there is no genuine issue as to any material fact and, for the reasons hereinafter discussed, grants the defendant's motion for summary judgment.[1]

Fed.R.Civ.P. 56(c) provides in pertinent part:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, in examining the propriety of a motion for summary judgment, the court must first determine whether there is a genuine issue as to any material fact.[2] Summary judgment may not be used to deprive a litigant of a full trial of genuine fact issues but may be granted where there are no disputed issues of material fact. If there is a genuine issue as to any material fact, the motion for summary judgment will not be granted. *Ettinger v. Johnson*, 556 F.2d 692, 696 (3d Cir. 1977); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951); *Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir. 1942). In considering a summary judgment motion, all doubts as to the existence of material facts should be resolved against the movant. *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *Abdallah v. Caribbean Security Agency*, 557 F.2d 61, 63 (3d Cir. 1977); *Scott v. Plante*, 532 F.2d 939, 945 (3d Cir. 1976). In addition, Fed.R.Civ.P. 56(e) provides in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*General Electric Co. v. Hol-Gar Manufacturing Corp.*, 431 F.Supp. 881, 884 (E.D.Pa. 1977), aff'd, 573 F.2d 1301 (3d Cir. 1978). If the opposing party does not so respond, summary judgment may appropriately be granted. *First National Bank v. Cities Service*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Proctor v. State Farm Mutual Automobile Insurance Co.*, 182 U.S. App.D.C. 264, 277, 561 F.2d 262, 275 (1977).

---

1. Since plaintiffs' claims in counts one through four allege violations of the TIL, this Court has subject matter jurisdiction. 15 U.S.C. § 1640(e).

2. The concern of Rule 56 is whether issues of material fact, as distinguished from issues of fact, are in dispute, *Tarasi v. Pittsburgh Nation-

*al Bank*, 555 F.2d 1152, 1156 (3d Cir.), cert. denied, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977); *Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 100 (3d Cir.), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

The Court, having reviewed the depositions and the loan documents which have been filed of record in this case, and having resolved all doubts concerning facts against the movant (defendant), finds that there is no genuine issue as to any material fact in this case.

The depositions of the plaintiffs, the depositions of Mr. and Mrs. Levine and the loan documents are in substantial agreement concerning the material facts. Defendant, First Mortgage, made a $55,000 loan, which loan was arranged by Victor Henry. M & J Sales and Service, Inc. (M & J Sales) was incorporated by Lawrence Levine and plaintiffs Jerome J. Weingarten and Milton J. Carter for the purpose of purchasing and operating a sewing machine business. After several unsuccessful attempts to obtain a commercial loan, Messrs. Levine, Weingarten and Carter retained Victor Henry to arrange for a loan. Victor Henry contacted First Mortgage, which agreed to make a $55,000.00 loan to M & J Sales on the condition that the plaintiffs and Mr. and Mrs. Levine become guarantors and provide as security second mortgages on their individual residences. Settlement in condition with the loan transaction took place on March 4, 1975, at which time First Mortgage delivered its check made payable to M & J Sales, in the amount of $50,542.09, the net proceeds from the $55,000.00 loan. The check was deposited in the corporate account of M & J Sales, and the proceeds from the loan were used to purchase and set up the sewing machine business.

Plaintiff, Jerome J. Weingarten, in his deposition, stated that "the purpose of the loan was to buy the business," (Jerome J. Weingarten, N.T. 55) and that the proceeds of the loan "were going to be used to buy the business from the Singer Company so that we could go into business and form our own business." (Jerome J. Weingarten, N.T. 42). In response to the question whether he and his wife received any of the proceeds of the loan, Mr. Weingarten responded that "We did not borrow it for us to use. It was for the business." (Jerome J. Weingarten, N.T. 54–55). Similarly, plaintiff Dorothy T. Weingarten, in her deposition, stated that the proceeds of the loan went into the business and that she did not personally receive any of the proceeds from the loan. (Dorothy T. Weingarten, N.T. 36, 40). Plaintiff Milton J. Carter, in his deposition, stated that the three men intended to use the money borrowed "to buy a business and to have a business of our own," (Milton J. Carter, N.T. 13), and that the money left over beyond the purchase price of the business would be used for business purposes. (Milton J. Carter, N.T. 23–24). Plaintiff Patricia E. Carter, in her deposition, stated that she knew that the money from the loan was to be used in the business (Patricia E. Carter, N.T. 10–11), that the purpose of the loan was for the three men to go into business for themselves (Patricia E. Carter, N.T. 21), and that she knew that she was not going to derive any direct personal benefit from the loan (Patricia E. Carter, N.T. 31). Lawrence Levine, in his deposition, stated that the only purpose of the loan was to buy the business (Lawrence Levine, N.T. 32–33) and that none of the six individuals received any of the proceeds from the loan. (Lawrence Levine, N.T. 33, 51, 72). Bella Levine, in her deposition, stated that she did not receive any of the money personally and that the only purpose of the loan was to buy the business. (Bella Levine, N.T. 13).

The Court has examined all of the following documents which have been filed of record in this case: the commitment letter, the disclosure statement, certified copies of M & J Sales resolutions, the loan agreement, the security agreements, the guarantee agreements, the guarantee affidavit forms, the corporate installment note, the bond and warrant, the mortgage, and the notices of the right of rescission. In all of these documents, without exception, the parties have designated M & J Sales as the borrower and the plaintiffs, together with Mr. and Mrs. Levine, as guarantors.

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, which we refer to herein as the TIL, provides that certain disclosures must be made to the consumer in credit transactions and makes available to the

consumer legal remedies where disclosures are not made in accordance with the Act.

The TIL states, in 15 U.S.C. § 1602(h), that the word "consumer," used with reference to a credit transaction, means:

[a transaction] in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes.

The material facts in this case, as to which there is no genuine issue, make it abundantly clear that the $55,000.00 loan transaction was not "primarily for personal, family, household, or agricultural purposes," and is therefore not a consumer credit transaction as defined in the TIL. The loan documents and the depositions all agree that the loan was for a business purpose, that is, the purchase of the sewing machine business by M & J Sales.

Furthermore, the TIL specifically exempts the transaction before this Court. In 15 U.S.C. § 1603, the Act provides:

This subchapter does not apply to the following:

(1) Credit transactions involving extensions of credit for business or commercial purposes, . . . or to organizations.

The depositions are in agreement that the extension of credit in the transaction before the Court was for "business or commercial purposes"; it is therefore an exempt transaction.[3] In addition, we also point out that 15 U.S.C. § 1603, quoted above, makes the TIL inapplicable to extensions of credit to organizations, and 15 U.S.C. § 1602(c) defines "organization" as follows: "The term 'organization' means a corporation

. . . ." Thus, the loan documents and the depositions also support the conclusion that the transaction before the Court is an exempt transaction pursuant to 15 U.S.C. § 1603(1), since it was a credit transaction involving an extension of credit to a corporation.

The cases which have been called to this Court's attention appear to hold without exception that where the credit transaction is for a business purpose rather than for a personal, family, household or agricultural purpose, then the transaction is not covered by the Act. *Sapenter v. Dreyco, Inc.*, 326 F.Supp. 871, 874 (E.D.La.), *aff'd*, 450 F.2d 941 (5th Cir.), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1971); *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 235, *rev'd and remanded en banc*, 523 F.2d 1 (10th Cir. 1975); *Smith v. Chapman*, 436 F.Supp. 58, 61 (W.D.Tex.1977); *Gerasta v. Hibernia Nat'l Bank*, 411 F.Supp. 176, 185 (E.D.La.1975), *aff'd in part, rev'd in part*, 575 F.2d 580 (5th Cir. 1978); *Puckett v. Georgia Homes, Inc.*, 369 F.Supp. 614, 620 (D.S.C.1974); *Adema v. Great Northern Development Co.*, 374 F.Supp. 318, 319 (N.D. Ga.1973). *See also Kenney v. Landis Financial Group, Inc.*, 376 F.Supp. 852, 853 (N.D. Iowa 1974).

Although certain statements in the depositions of the six individuals indicate that they may have considered the loan to be a personal loan, this apparent misconception stemmed from the fact that they were guarantors, not borrowers, in the loan transaction. *See, e. g.,* Jerome Weingarten, N.T. 55; Dorothy Weingarten, N.T. 47–48; Milton Carter, N.T. 24–25. Although the six individuals, as guarantors, gave second mortgages on their homes in connection with the loan, this is to no avail where the

---

**3.** Plaintiffs claim that First Mortgage waived the fact that the transaction was exempt from the TIL by including the following language in its loan commitment letter dated February 20, 1975:

It is understood and agreed by the parties hereto that, while the within loan transaction is exempt from the provisions of the 1968 Consumer Trade Protection Act, commonly known as "Truth in Lending," in that it is a loan to a corporation the aforesaid loan

transaction will be consummated in accordance with all the provisions of the aforesaid "Truth in Lending Act", and that, prior to settlement lender will supply to borrower a loan disclosure statement duly completed, which will be executed by borrower if same is acceptable. . . .

In the event the parties so agreed, this language might form a basis for a breach of contract claim in connection with a pendent state law claim.

extension of credit was for a business purpose. In *Sapenter v. Dreyco, Inc., supra,* wherein the plaintiffs mortgaged their residence in order to receive a loan to extend a past due obligation incurred on rental property which they had purchased and owned as an investment, the court held that the transaction was not within the purview of the TIL and stated:

In determining whether a particular transaction is exempt, therefore, the *purpose* of the transaction or extension of credit is controlling, not the property on which the security interest is retained. Thus, in the instant case, the extension of credit was for a business purpose and [the right of rescission under] § 1635(a) is of no avail to plaintiffs even though the mortgage was placed on their residence. 326 F.Supp. at 874.

Likewise, in *Redhouse v. Quality Ford Sales, Inc., supra,* where a borrower obtained a loan to purchase a truck, the Tenth Circuit stated that the question whether the TIL was applicable to the transaction depended on whether the truck was purchased for a business purpose or for a personal use. Similarly, in *Puckett v. Georgia Homes, Inc., supra,* where a loan was made to finance the purchase of a mobile home which the borrower intended to rent to a tenant, the court held that, because the borrower intended to use the loan to purchase rental property, the loan transaction was for a business purpose and was exempt from the provisions of the TIL. And the court in *Adema v. Great Northern Development Co., supra,* held that a loan obtained to purchase land for investment purposes was not within the coverage of the TIL.

Accordingly, the Court will enter an order granting summary judgment to the defendant for the reasons hereinbefore set forth.

As mentioned earlier in this memorandum, the plaintiffs' claims in counts five through eight of their complaint are pendent state law claims. As stated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." We shall therefore decline to exercise jurisdiction over plaintiff's state law claims.