**AMBROSE BRANCH COAL CO., INC., Plaintiff,**

v.

**Glenn R. TANKERSLEY, Trustee, Defendant.**

**Civ. A. No. 89–0083–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Oct. 23, 1989.

---

**10.** See Debtor's Findings of Fact, p. 1.

**11.** *See* Defendant's Exhibit A (irrevocable letter of credit, No. 008–85).

**12.** *Id.*

Phillip D. Payne, IV, Roanoke, Va., for plaintiff.

John M. Lamie, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter comes before the court on appeal from the United States Bankruptcy Court for the Western District of Virginia. Double O Coal Corporation ("Double O") is a debtor in bankruptcy. Glenn R. Tankersley ("Tankersley") serves as Chapter 7 trustee for the Double O estate. Tankersley brought an adversary proceeding against Ambrose Branch Coal Co., Inc. ("Ambrose") and others on August 9, 1988. Ambrose now appeals to this court, under 28 U.S.C. §§ 158(a) and 1334(a), from the denial of its motion to dismiss the complaint as untimely.

## FACTUAL BACKGROUND

Double O filed a petition for bankruptcy relief under Chapter 11 on November 10, 1982. On February 22, 1983, as debtor in possession, Double O filed a complaint ("the 1983 complaint") against Ambrose and others. The 1983 complaint detailed an agreement, by which Double O was to mine coal at mines owned by Ambrose. The 1983 complaint contained allegations that the agreement was wrongfully terminated and that after November 4, 1982, Double O was prevented from recovering its equipment which remained in the Ambrose mines. R. 127.[1] In the prayer for relief of the 1983 complaint, Double O sought a temporary restraining order to prevent de-

---

1. References to the record are designated "R. ___."

struction of its property, return of its equipment, and an award of damages for the defendants' use of the equipment. R. 128–29.

By its amended order of April 4, 1983, the bankruptcy court denied the temporary restraining order and transferred Double O's complaint to this court to permit it "to file a new complaint for recovery of designated property alleged to be held by the defendant as the plaintiff may deem appropriate." R. 131. Double O never filed a complaint with this court. Consequently, with nothing before it to decide, this court dismissed the case without prejudice on April 25, 1983. R. 133. On April 29, 1983, the bankruptcy court authorized conversion of the Double O bankruptcy case to Chapter 7.

Tankersley became trustee of the Double O estate in 1984. On October 18, 1984, Tankersley filed a complaint ("the 1984 complaint") against the same parties, including Ambrose, which were defendants named in the 1983 complaint. The 1984 complaint essentially replicated the averments of the 1983 complaint.

The United States intervened in the proceeding begun by the 1984 complaint. On March 7, 1988, the bankruptcy court entered an order granting the motion of the United States for voluntary dismissal of its complaint in intervention. R. 122. The March 7 order gave Tankersley a week in which to determine whether the case begun by the 1984 complaint should go to trial. Tankersley moved for voluntary dismissal of the case. The bankruptcy court proceeded to dismiss the case without prejudice on March 21, 1988. R. 124.

Tankersley filed his current complaint against Ambrose on August 9, 1988 ("the 1988 complaint"). The 1988 complaint does not refer to or seek relief for the breach of contract which was the focus of the 1983 and 1984 complaints. The prayer for relief of the 1988 complaint also differs from the 1984 complaint's prayer in that it seeks not only the return of the equipment but also damages for conversion of the equipment.

**2.** The current statute reads "applicable non-bankruptcy law." 11 U.S.C. § 108. The amend-

## LEGAL CONCLUSIONS

The Bankruptcy Code explicitly provides for an extension of the time within which a trustee may act upon the causes of action of his debtor which were not time-barred before the debtor entered bankruptcy. The Code provides that a trustee has the longer of two periods within which to commence an action. The trustee has either two years from the order for relief, or such longer period in which to bring suit as the "applicable law" may allow. 11 U.S.C. § 108(a).[2] More than two years lapsed after Double O's original petition as well as after the conversion of Double O's case before Tankersley filed the 1988 complaint. Consequently, the 1988 complaint is timely if at all under the "applicable law" incorporated by section 108(a).

Tankersley's tort claims arise under Virginia law rather than the Bankruptcy Code. Virginia law provides that an action for injury to property must be brought within five years of the accrual of the cause of action. Va.Code § 8.01–243 B. A cause of action for injury to property accrues at the time of the alleged breach of duty or contract. Va.Code § 8.01–230. The conduct by Ambrose of which Tankersley complains occurred in 1982. Consequently, the limitations period for Tankersley's claims expired in 1987 unless some tolling provision applies.

The bankruptcy court concluded that Tankersley's 1988 complaint was timely by the operation of section 8.01–229 E 3 of the Virginia Code. Section 8.01–229 E 3, at the time Tankersléy's cause of action accrued, read as follows:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01–380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date he suffered such nonsuit, or within the original period of limitation, whichever period is longer.

ment which added the word "nonbankruptcy" does not apply to this case.

Va.Code § 8.01–229 E 3 (1977). The bankruptcy court followed *Sherman v. Hercules,* 636 F.Supp. 305 (W.D.Va.1986) and *Scoggins v. Douglas,* 760 F.2d 535 (4th Cir.1985), which held that voluntary dismissal under Rule 41(a) of the Federal Rules of Civil Procedure was equivalent to a voluntary nonsuit under Va.Code § 8.01–380 for the purposes of applying subsection 229 E 3 in federal court. Less than six months passed after the voluntary dismissal of Tankersley's 1984 complaint before he filed the 1988 complaint. The bankruptcy court concluded, therefore, that the 1988 complaint was timely.

Ambrose raises four issues on appeal. First, Ambrose distinguishes *Sherman* and *Scoggins* as non-bankruptcy cases and argues that uniform tolling rules should apply in bankruptcy cases. Second, Ambrose contends that the Virginia tolling rule for nonsuits applies to extend the limitations period only after the first nonsuit, and that the dismissal of the 1984 complaint was, in effect, the second nonsuit. Third, Ambrose protests that the nonsuit tolling provision does not apply to the conversion claim of the 1988 complaint because it was not raised previously. Finally, Ambrose argues that Tankersley's 1988 complaint was untimely under the doctrine of laches.

■ Ambrose's first argument is entirely without merit. It conflicts with the language of 11 U.S.C. § 108(a)(1). Section 108(a)(1) allows the trustee the benefit of any period fixed by applicable law which extends beyond the two-year minimum of Section 108(a)(1).

> "[S]ection 108 clearly allows for the commencement or continuation of an action beyond two years from the order for relief if applicable nonbankruptcy law fixes a time period which extends beyond that two year limitation."

2 Collier on Bankruptcy ¶ 108.02.[3] The law applicable to Tankersley's complaint is Virginia law, which includes Virginia's limitations law and subsection 229 E 3 as construed in *Sherman* and *Scoggins.* On this reading, section 108(a) alone rebuts Ambrose's argument that bankruptcy policy requires uniform tolling rules for trustee actions.

■ The constitutional requirement of uniformity does not require a different result. "A bankruptcy law may be uniform and yet 'may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different states.' " *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 469, 102 S.Ct. 1169, 1176, 71 L.Ed.2d 335 (1982) (quoting *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918)). The court believes that section 108(a) requires application of applicable state tolling rules. Even if it does not, under more general principles, state tolling statutes should apply to a trustee's state law claims in the absence of any conflict between the state laws and bankruptcy law. Neither section 108 nor any other provision of the Bankruptcy Code prohibit the application of Virginia's tolling law.

In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court observed:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from recovering 'a windfall merely by reason of the happenstance of bankruptcy.'

*Id.* at 55, 99 S.Ct. at 918 (citations omitted). The same reasoning applies to Tankersley's interest in the application of the Virginia tolling rule, whether or not it is a "property interest." The 1988 complaint raises common law tort claims "created and defined by state law." At least in diversity cases, application of state law includes application of state statutes of limitation, which in turn includes tolling rules which are "integral part[s] of the several policies served

---

3. See *supra* note 2.

by the statute of limitations." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980). In *Yarber v. Allstate Ins. Co.*, 674 F.2d 232 (4th Cir.1982), the Virginia tolling rule for nonsuit and its requirements were held to be integral parts of Virginia's statute of limitations policy. *Id.* at 236–37.

Ambrose dwells at length in its brief on the point that *Erie* doctrine cases like *Yarber* and *Sherman* and civil rights cases like *Scoggins* and *Cramer v. Crutchfield*, 648 F.2d 943 (4th Cir.1981), all of which applied section 8.01–229 E 3, are not binding precedents. Ambrose's position is correct only to the extent that Congress, if it chose, could adopt a uniform tolling rule of the sort which Ambrose urges. *See Herget v. Central Bank Co.*, 324 U.S. 4, 6–8, 65 S.Ct. 505, 506–07, 89 L.Ed. 656 (1945); *see* especially *Isaacs v. Neece*, 75 F.2d 566, 569 (5th Cir.1935) and *Engebretson v. West*, 133 Neb. 846, 277 N.W. 433, 466 (1938) (cases cited in *Herget*, 324 U.S. at 6 n. 4, 65 S.Ct. at 507 n. 4, for the proposition that section 11(d) of the original Bankruptcy Act of 1898 provided a uniform two-year limitation for all trustee actions). "Congress is not required to direct the federal courts to look to state law for the definition of state-created rights in bankruptcy, as it is when federal jurisdiction vests solely on diversity of citizenship. The question is of intent, not power." *Fore Improvement Corp. v. Selig*, 278 F.2d 143, 147 (2d Cir.1960) (Friendly, J., concurring).

In terms of congressional intent with regard to state tolling statutes, section 108(a) is significantly similar to 42 U.S.C. § 1988. Like section 1988, section 108(a) incorporates applicable state law to complement the provisions of federal law. With regard to civil rights claims to which section 1988 applies, the Supreme Court has rejected the argument that "although the duration of the limitation period is bottomed on state law, it is federal law that governs other limitations aspects, such as tolling...." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The Court in *Johnson* held that application of the whole limitations law of the states would be appropriate for civil rights claims except "where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465, 95 S.Ct. at 1722. Inconsistency between state limitations law and section 108(a) is not possible, as Congress has specifically defined the federal policy to incorporate state law.

■ Ambrose suggests that the *Erie* doctrine has no application except where federal jurisdiction rests on diversity. "[D]espite repeated statements implying the contrary, it is the *source* of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law. Thus, the *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 539 n. 1 (2d Cir. 1956) (emphasis in original). Congress has the authority to preempt state law regarding bankruptcy. Even with regard to purely federal causes of action, however, the Supreme Court has stated that preemption of state statutes of limitations should not be inferred from congressional silence. *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 162, 107 S.Ct. 2759, 2770, 97 L.Ed.2d 121 (1987) (Scalia, J., concurring); *Campbell v. Haverhill*, 155 U.S. 610, 616, 15 S.Ct. 217, 219, 39 L.Ed. 280 (1895). In section 108(a), Congress has not been silent, but has chosen to follow *Erie* principles and require application of state limitations law to the extent it does not conflict with the two-year minimum extension of time required by section 108(a)(2).

From this analysis, this court concludes that it should follow the prior decisions which have held that voluntary dismissal in federal court tolls the running of Virginia's statutes of limitations under section 8.01–229 E 3 of the Virginia Code. This holding is also consistent with the few bankruptcy cases the court has found which deal with tolling. See *Buchman v. American Foam Rubber Corp.*, 250 F.Supp. 60, 72 (S.D.N.Y. 1965) (holding that "the Trustee is entitled

to the benefit of the infancy provision of the applicable statute of limitations" as to a fraudulent conveyance action in which the trustee asserted the rights of infant creditors); *In re Discount Plywood Centers, Inc.*, 11 B.R. 866, 868 (Bankr.E.D.Pa. 1981) (holding that a court of appeals decision in a section 1983 case controlled the issue in bankruptcy proceedings as to the tolling effect of prior state court proceedings). The *Hewlett* case, on which Ambrose relies, is presently distinguishable for the same reason which led the court in deciding *Hewlett* to distinguish it from *Scoggins. Hewlett v. Russo*, 649 F.Supp. 457, 460 (E.D.Va.1986) ("Here, however,' plaintiff's suit is controlled by ... a *federal* statute which does indeed contain a limitation period" (emphasis in the original)).

■ Ambrose's second argument requires characterization of the dismissal of the 1983 complaint as voluntary or involuntary. The significance of the voluntariness distinction lies in the particular provisions of the Virginia statutes. *Cf. Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C.Cir.1981) (under District of Columbia law as to the tolling effects of a prior dismissal, "the pivotal question is whether the dismissal was with or without prejudice, not whether it was voluntary or involuntary"). The court concludes that the dismissal of the 1983 complaint was not the equivalent of a "voluntary nonsuit" for the purpose of applying section 8.01–229 E 3.

Section 8.01–229 E 3 specifically modifies "nonsuit" with "voluntary" in describing the application of the tolling rule. In addition, the meaning of "nonsuit" itself, as it appears in section 8.01–229 E 3, derives from the provisions of section 8.01–380. "[S]ubsection E(3) must be read in light of § 8.01–380 which provides the plaintiff with one opportunity to take a nonsuit without the defendant's permission or without the court's approval." Boyd, Graves & Middleditch, Virginia Civil Procedure 166–67.

"Nonsuit," as a statutory term in section 8.01–380, refers to "voluntary termination by the plaintiff of pending litigation not

precluding a later lawsuit upon the same cause of action." *Moore v. Moore*, 218 Va. 790, 795 n. 4, 240 S.E.2d 535, 538 (1978). Significantly, section 8.01–380 pertains exclusively to limitations on the plaintiff's ability to obtain a nonsuit. Moreover, the organization of section 8.01–229 E supports the conclusion that section 8.01–229 E 3 applies only where the plaintiff has voluntarily dismissed an action. Subsection 8.01–229 E 1 provides a tolling rule for other types of dismissals.[4]

Ambrose does not assert that the dismissal of the 1983 complaint was the result of any conduct on the part of Double O other than the failure to file a new complaint with this court. Without any greater showing of "voluntariness," this court is unwilling to characterize its action in 1984 as other than an involuntary dismissal. Consequently, the dismissal of the 1983 complaint does not count as a "voluntary nonsuit" for the purposes of applying section 8.01–229 E 3.

The third argument Ambrose raises is that Tankersley's request for conversion damages is time-barred because it was not raised before the expiration of the five-year limitations period. This argument conflicts sharply with the federal theory of pleading. The court concludes that Tankersley's conversion claim is not time-barred.

■ Despite the state law character of Tankersley's claims, federal law determines the sufficiency and effect of his pleadings. See Wright & Miller, Federal Practice and Procedure: Civil § 1204. All the federal rules "require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 8(a)(2). Rule 8 does not require an election of remedies. Whatever their historical and technical differences, conversion and detinue are simply alternative remedies "for the redress of a single right." *Grogan v. Garner*, 806 F.2d 829, 939 (8th Cir.1986). "The sufficiency of a

**4.** The court offers no opinion as to the applicability of section 8.01–229 E 1 to this case.

pleading is tested by the statement of the claim and the demand for judgment is not considered part of the claim." Wright & Miller, *supra* at § 1255.

This court believes that the 1984 complaint and the 1988 complaint state the same "claim" within the meaning of Rule 8. The claim is for the wrongful taking or retention of the Double O equipment located in the Ambrose mines. The addition of the term "conversion" and a request for conversion damages in the 1988 complaint does not mean that the 1988 complaint raises new claims. As the Fourth Circuit stated, a plaintiff in federal court

> need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it upon any theory. Under this liberalized practice, a party's misconception of the legal theory of his case does not work a forfeiture of his rights.

*New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24–25 (4th Cir.1963). The 1988 complaint merely seeks an additional remedy for the same claim raised by the 1984 complaint. The court believes, therefore, that the statute of limitations was tolled not only as to detinue but also as to conversion and any other remedy to which Tankersley may be entitled on the basis of the alleged wrongful conduct of Ambrose.

Ambrose's final argument concerns laches. The court concludes that in view of the holding that Tankersley's complaint is within the statute of limitations the doctrine of laches cannot apply.

## CONCLUSION

For the reasons stated herein, the decision of the bankruptcy court is AFFIRMED.