In re MacGREGOR SPORTING GOODS, INC., Debtor.

Bruce H. LEVITT, Bankruptcy Trustee for MacGregor Sporting Goods, Inc., now known as M. Holdings, Inc., Paul Swanson Bankruptcy Trustee for MGS Acquisition, Inc., Plaintiffs,

v.

RIDDELL SPORTS, INC., RHC Licensing Corporation, Riddell, Inc., Equilink Licensing Corporation, Macmark Corporation, Ridmark Corporation and NBD Bank, N.A., Frederic H. Brooks, Frederick W. Isaacs, Jr., J. Harrison Beal, Marvin D. Geller, Stuart A. Miller, Hans S. Edersheim, Martin R. Bring, James F. Keegan and Emil W. Solimene, Defendants.

Bankruptcy No. 89–01973 (RG).
Adv. No. 95–2261.

United States Bankruptcy Court,
D. New Jersey.

Nov. 27, 1995.

Mudge, Rose, Guthrie, Alexander & Ferdon by Edward J. Boccher, Parsippany, NJ, for Trustee.

Skadden, Arps, Slate, Meagher & Flom by Gregg M. Galardi, Newark, NJ, for Defendants Riddell Sports, Inc., RHC Licensing Corporation, Riddell, Inc., Equilink Licensing Corporation, Macmark Corporation and Ridmark Corporation.

Bendit, Weinstock & Sharbaugh by James F. Keegan, West Orange, NJ, pro se.

Orloff, Lowenbach, Stifelman & Siegel by Linda B. Lewinter, Roseland, NJ, for Defendant Emil W. Solimine.

Molton & Meekins by Susan L. Meekins, Upper Montclair, NJ, for Defendant Frederick H. Brooks.

J. Harrison Beal, Knoxville, TN, pro se.

Marvin D. Geller, Allendale, NJ, pro se.

Stuart A. Miller, Pembroke Pines, FL, pro se.

Hans S. Edersheim, New York City, pro se.

Martin R. Bring, New York City, pro se.

Frederick W. Isaacs, Jr., Virginia Beach, VA, pro se.

### OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

There are presently before the Court nine Motions brought by Marvin D. Geller, Stuart A. Miller, Hans S. Edersheim, Martin R. Bring, James F. Keegan, Esq., Frederick W. Isaacs, Jr., J. Harrison Beal, Emil W. Solimine [1], and Frederic H. Brooks (collectively referred to herein as "MacGregor Board Defendants" or "Movants") to Dismiss Count Three of the Plaintiffs' Adversary Complaint and one Motion brought by Frederic H. Brooks (hereinafter "Brooks") to Dismiss Count Four of the Plaintiffs' Adversary Complaint pursuant to Fed.R.Civ.P. 12(b)(6), incorporated by Fed.R.Bankr.P. 7012, for failure to state a claim upon which relief can be granted. Movants are all former directors of MacGregor Sporting Goods, Inc. at the time certain allegedly fraudulent transfers were made. Movant Martin R. Bring filed an affidavit (hereinafter "Bring Affidavit") in support of his motion to dismiss. In support of his motion to dismiss, James F. Keegan (hereinafter "Keegan") filed a brief which incorporated the Bring Affidavit by reference. Movant J. Harrison Beal (hereinafter "Beal") filed a declaration in support of the MacGregor Board Defendants' motions to dismiss. The Trustees filed a brief in opposition to the motions to dismiss. Movants Frederic Brooks and Emil Solimine (hereinafter "Solimine") each filed a reply memorandum in support of the motions to dismiss.

On August 22, 1995, the Court heard argument on the motions to dismiss. The Court reserved the decision on all motions. Subsequent to the hearing, the Court received a series of letter briefs from the parties addressing issues regarding the applicability of certain caselaw cited at the hearing. The following constitutes the Court's findings of fact and conclusions of law.

### FACTS

On March 16, 1989, MacGregor Sporting Goods, Inc., now known as M Holdings, Inc. ("MacGregor" or "the Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (Case No. 89–01973). MacGregor is incorporated in Delaware with, at all times relevant herein, its principal place of business in East Rutherford, New Jersey.

On April 1, 1993, the then Debtor–In–Possession and the Official Unsecured Creditors' Committee ("the Committee") filed an adversary proceeding against Riddell Sports, Inc., RHC Licensing Corp., Riddell, Inc., Equilink Licensing Corp., Macmark Corp., Ridmark Corp., and NBD Bank, N.A. (Adv. Pro. No. 93–2214). The Complaint alleged that certain prepetition transactions involving the Debtor, its former subsidiaries and Riddell were voidable as fraudulent transfers under 11 U.S.C. § 554 and § 548(a). The

---

1. The pleadings incorrectly identify Emil W. Solimine as Emil W. Solimene. *See* Solimine's Motion to Dismiss Count three of the Complaint, at 2.

Complaint alleged that sales of assets made by the Debtor to the defendants in April 1988 and February 1989 were fraudulent to MacGregor's creditors because the defendants paid less than "reasonably equivalent value" or "fair consideration" for the assets at the time of the sales. The Complaint further alleged that at such time, MacGregor was insolvent and undercapitalized.

On June 9, 1993, the Committee and the Debtor filed an amended complaint also alleging that the 1988 and 1989 sales were avoidable as fraudulent transfers. Paul Swanson, the Trustee of MGS Acquisition, Inc. ("MGS"), was added as a co-plaintiff. The amended complaint did not name as individual defendants the members of the MacGregor Board of Directors at the time the transactions were negotiated and closed.

Upon reconsideration of a prior denial of defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012, this Bankruptcy Court, by written Opinion dated and filed on October 24, 1994, ordered the dismissal of the amended adversary complaint brought by the Debtor and the Committee as time barred under 11 U.S.C. § 546(a)(1) relying on the Third Circuit decision of *In re Coastal Group, Inc.*, 13 F.3d 81 (3d Cir.1994). On that same date, this Court granted the Committee's motion for the appointment of a trustee. Bruce H. Levitt was appointed Chapter 11 Trustee for MacGregor by Order dated November 3, 1994.

The present adversary action was filed on March 10, 1995 by the Trustees for MacGregor and MGS (collectively, "the Trustees"). The Trustees, pursuant to 11 U.S.C. § 548(a), seek to avoid two transactions between MacGregor, its former subsidiaries, and Riddell as fraudulent transfers.

The first transaction ("the 1988 transaction") was closed on April 18, 1988 pursuant to an Asset Purchase Agreement dated April 10, 1988. MacGregor filed a Current Report under Form 8–K with the United States Securities and Exchange Commission ("SEC") on May 16, 1988. A press release was issued through PR Newswire Association, Inc. ("PR Newswire") on April 18, 1988. The second transaction ("the 1989 transac-

tion") was entered into pursuant to a License and Stock Purchase Agreement dated February 2, 1989 among MacGregor, RHC Licensing Corp. and Riddell Sports, Inc. MacGregor filed a Current Report under Form 8–K with the American Stock Exchange on February 14, 1989 and the SEC on February 15, 1989. A press release was issued through PR Newswire on February 10, 1989. Bring Affidavit, Exhibits B–E.

The Trustees' Complaint names as defendants members of the MacGregor Board of Directors. Count Three of the Complaint alleges that the MacGregor Board Defendants breached their fiduciary duty of care, loyalty and good faith to MacGregor, its shareholders and creditors when they approved the 1988 Transactions and 1989 Transactions which sold MacGregor assets for less than reasonably equivalent value or for less than fair consideration.

The MacGregor Board Defendants move to dismiss Count Three of the Trustees' Complaint on the grounds that the action is time barred.

In addition to Brooks' Motion to Dismiss Count Three, Brooks also moves to dismiss Count Four of the Trustees' Complaint, which sets forth a separate claim against Brooks individually for breach of fiduciary duty arising from his conduct in negotiating the 1989 transaction on behalf of both MacGregor and Riddell.

## DISCUSSION

### I. Applicable Standards

#### A. Standard for Dismissal Pursuant to Fed.R.Civ.P. 12(b)(6), as Incorporated by Bankruptcy Rule 7012

Bankruptcy Rule 7012(b), which incorporates Federal Rule 12(b)(6), provides for dismissal of any complaint that fails to state a claim upon which relief can be granted. When considering a motion to dismiss, a court must accept as true all allegations in the complaint and all reasonable inferences drawn from those allegations, and view them in light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, *reh'g de-*

nied, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). The test for determining when to dismiss under this Rule is whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *See Holder v. Allentown*, 987 F.2d 188, 194 (3d Cir.1993). In making this determination, the court accepts the nonmovant's narrative of the facts and any reasonable inferences, but a court does not accept conclusory statements about the legal effect of those assertions. *Id.* at 194 (citing *Wright & Miller*, 5A Fed. Practice & Proc., § 1357 at p. 319). Movants are entitled to dismissal if the plaintiff can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Summary Judgment Standard

■ Federal Rule of Civil Procedure ("Rule") 56, made applicable to Adversary Proceedings by Federal Bankruptcy Rule 7056, provides in pertinent part:

> (c) *Motion and Proceedings Thereon ...* The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The party moving for summary judgment ("movant") has the burden of establishing the nonexistence of any "genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir.1951).

■ The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the outcome of a summary judgment motion:

> the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S.

654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubt against the moving party, *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson*, [477 U.S. at 253–55] 106 S.Ct. at 2513. In addition, a plaintiff seeking summary judgment must demonstrate the absence in the record of a prima facie defense. The evidence must be considered in light most favorable to the defendant. *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986).

*Kronmuller v. West End Fire Co. No. 3*, 123 F.R.D. 170, 173 (E.D.Pa.1988).

### C. Dismissal and Summary Judgment in the Instant Case

■ The motions presently before this Court were raised as "motions to dismiss." The Court will evaluate the motions under both a dismissal standard and a summary judgment standard. Rule 12(b) of the Federal Rules of Civil Procedure provides in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As explained in 9 *Collier On Bankruptcy* ¶ 7012.05 (15th ed.1994) (footnotes omitted):

> If a motion is made to dismiss a pleading for failure to state a claim, that motion may be treated as one for summary judgment and disposed of pursuant to Civil Rule 56. Such a situation would occur when matters outside of the pleading to which the motion is made, such as an affidavit, are raised by one of the parties and considered by the court. All parties are to be given a reasonable opportunity to

present material outside of the pleadings if the motion is to be considered one for summary judgment.

*See, e.g., Moran v. Paine, Webber, Jackson & Curtis,* 279 F.Supp. 573, 578 (W.D.Pa.1966) (court treated 12(b)(6) motion as one for summary judgment where movant filed matters outside the pleadings and nonmovant had opportunity to reply), *aff'd,* 389 F.2d 242 (3d Cir.1968); *In re Scionti,* 40 B.R. 947, 948 (Bankr.D.Mass.1984) (court treated 12(b)(6) motion as one for summary judgment where parties submitted a Stipulation of Facts along with the motion).

In the instant case, both the Trustees and the Movants have submitted matters "outside the pleadings." Movant Martin R. Bring has submitted an affidavit, with exhibits, upon which he and James F. Keegan, Esq. rely in support of their motions to dismiss. Movant J. Harrison Beal submitted a declaration in support of all of the motions to dismiss. The Trustees have submitted a brief in opposition to Bring's Motion to Dismiss. Movants Frederic Brooks and Emil Solimine have each submitted reply briefs, the former with exhibits. The parties have had the opportunity to submit and reply to the submissions, as well to supplement those submissions with letter briefs addressing issues raised at oral argument. Thus, the Court will additionally evaluate the matter under Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

## II. Count Three: Breach of Fiduciary Duty by MacGregor Board Defendants

### A. Statute of Limitations

Movants allege that the statute of limitations for bringing the instant action has expired. Plaintiffs, however, assert four separate arguments as to why the action is timely. First, the Trustees assert that the action is timely pursuant to 11 U.S.C. § 546. Second, the Trustees assert that,

even if the statute of limitations is governed by state law, there remains a question of fact as to when the cause of action accrued. Next, the Trustees allege that the conduct of the MacGregor Board Defendants serves as a basis to toll the limitations period. Finally, the Trustees maintain that the issue as to whether the statute of limitations has run cannot be resolved in the absence of discovery. Each of these arguments will be examined in turn.

### 1. Limitations Period of 11 U.S.C. § 546(a)

The Trustees assert that, because the breach of fiduciary duty claims against the MacGregor Board Defendants and the relief sought therein are "inextricably linked (and transactionally identical) to the fraudulent transfer claim against the Riddell defendants, the breach of fiduciary duty claim is timely under the applicable limitations period set forth in 11 U.S.C. § 546." Plaintiffs' Brief in Opposition at 14.

Section 546(a) of the Bankruptcy Code provides:

**Limitations on avoiding powers.**

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

■ Counts One and Two of the Complaint seek to avoid two transactions as fraudulent transfers, pursuant to 11 U.S.C. § 548.[2] Under 11 U.S.C. § 548, a trustee

---

**2.** Section 548 of the Bankruptcy Code provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of

the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or

may avoid any transfer of an interest of the debtor in property if made within one year of filing, and the debtor received less than a reasonably equivalent value in exchange for the transfer and was insolvent.

The Trustees assert that, since the present action is an avoidance action pursuant to § 548, the applicable statute of limitations is set forth in 11 U.S.C. § 546(a). The Trustees, therefore, assert that they may bring an action for fraudulent transfer before the earlier of two years after the appointment of the trustee or the time that the bankruptcy case is closed or dismissed. The MacGregor Trustee was appointed on November 3, 1994. This action was commenced March 10, 1995.

The Trustees here seek to extend the breadth of § 546 to include the breach of fiduciary duty claim against the MacGregor Board Defendants. The Trustees essentially argue that the breach of fiduciary duty claim must also be timely because it is "intertwined and inseparable" from the avoidance action. *See* Plaintiffs' Brief in Opposition at 14. The Trustees allege that both actions "derive from a common set of facts and compel identical relief. They are complimentary claims arising from identical transactions being pursued in a singular avoidance lawsuit." *Id.*

■ The MacGregor Board Defendants argue that Count Three of the Complaint alleges an entirely different cause of action from the avoidance action. The essence of the Trustees' claim, the MacGregor Board Defendants contend, is not a "comprehensive avoidance action" as the Trustees allege, but rather, a claim for breach of fiduciary duty governed by state law. This Court must agree. The Trustees are attempting to mold a breach of fiduciary duty claim into the shape of an avoidance proceeding simply because part of the relief they seek in the Complaint is avoidance. In this manner, the

Trustees seek to take advantage of the extended statute of limitations available to trustees pursuant to 11 U.S.C. § 546. However, the relief the Trustees seek on Count Three is not avoidance, but rather, money damages. Because this action is not an avoidance action pursuant to 11 U.S.C. § 548, the statute of limitations is not governed by § 546 of the Bankruptcy Code. Therefore, the action is governed by nonbankruptcy statutes of limitations.

### 2. Nonbankruptcy Statutes of Limitations

■ State law governs Plaintiffs' breach of fiduciary duty claim against the MacGregor Board Defendants. MacGregor is incorporated in Delaware with its principal place of business in East Rutherford, New Jersey. MacGregor filed its bankruptcy petition in the District of New Jersey and the instant adversary proceeding was commenced as part of MacGregor's bankruptcy case. Insofar as this Court has determined that state law governs the breach of fiduciary duty claim, the issue before this Court becomes whether the Delaware or New Jersey statute of limitations applies.

#### a. Choice of Law

■ A federal court applies the choice of law rules of the forum in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). Historically, it was believed that courts sitting in diversity should apply its own procedural law, even if it applied the substantive law of a foreign jurisdiction. Thus, the statute of limitations, ordinarily considered procedural in nature, was controlled by the law of the forum, rather than by the law of the state whose substantive law applies. New Jersey has aban-

became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

 (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548.

doned such "ritualistic concepts" in favor of a "most significant relationship" standard under which the governmental interests of both jurisdictions are balanced. *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 141, 305 A.2d 412 (1973).

> This court has interpreted *Heavner* as adopting the "governmental interest approach" to resolving conflicts of law as to statutes of limitation. *Henry v. Richardson–Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir. 1975). That approach involves two steps: "The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction." *Id.* ... [t]he *Henry* court read *Heavner* as establishing New Jersey's method of performing the second step in the governmental interest analysis. It requires the balancing of ... five factors ... (1) where the cause of action arose; (2) amenability to suit in other states; (3) the substantial interest, if any, of New Jersey in the suit; (4) which state's substantive law will apply; and (5) whether the other state's limitations statute has run.

*Republic of the Philippines v. Westinghouse Elec. Corp.,* 774 F.Supp. 1438, 1448 (D.N.J. 1991) (citing *Allen v. Volkswagen of America, Inc.,* 555 F.2d 361, 362–63 (3d Cir.1977)). This Court must consider the various factors enumerated above to determine which state has the more compelling interest in the outcome of this case. New Jersey conflicts of law principles require the application of the law of the state with the most significant contacts to the dispute.

 Counsel for Defendant Brooks asserts that the breach of fiduciary duty claim against the MacGregor Board Defendants should be governed by Delaware's three year statute of limitations.[3] Brooks argues that the liability of corporate directors for breach of their fiduciary duties is governed by the law of the state of incorporation, i.e., in MacGregor's case, Delaware. *See Coleman v. Taub,* 638 F.2d 628, 629 n. 1 (3d Cir.1981) (law of the state of incorporation applies to claims of breach of fiduciary duty by directors or officers and other matters involving "internal affairs" of the corporation).[4] This rule, however, is not absolute. In *Ono v. Itoyama,* 884 F.Supp. 892, 894 (D.N.J.1995), the court stated that "[t]he local law of the state of incorporation will be applied 'to determine the existence and extent of a director's or officer's liability to its shareholders, *in the absence of another state with a more significant relationship*'" (quoting *Tabas v. Mullane,* 608 F.Supp. 759, 764 (D.N.J.1985)) (emphasis added). *Accord, In re ORFA Sec. Litig.,* 654 F.Supp. 1449, 1455 (D.N.J.1987) (New Jersey law applied even though defendant incorporated in Utah).

Brooks asserts that New Jersey's interest in applying its statute of limitations in the present case is "negligible." Brooks' Response, filed Sept. 5, 1995, to Letter from Richard Ballot, at 2. Brooks points out that,

---

**3.** Delaware's statute of limitations is codified at 10 Del.Code § 8106, which provides as follows:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.

Common law claims of mismanagement and breach of fiduciary duty are governed by this section. *Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 379 (D.Del.1983).

**4.** The determination of which state substantive law applies is of great importance, as the Third Circuit had held that the court should borrow the statute of limitations from the state whose substantive law applies. The Third Circuit, in interpreting *Heavner,* has held that the "critical determination underlying the 'borrowing' of a foreign statute of limitations is a determination as to whether a foreign substantive law is to be applied." *Republic of the Philippines v. Westinghouse Elec. Corp.,* 774 F.Supp. 1438, 1449 (D.N.J.1991) (citing *Schum v. Bailey,* 578 F.2d 493, 495 (3d Cir.1978)). If Delaware substantive law applies in this case, then, under *Schum,* this court must arguably apply the Delaware statute of limitations.

while its Chapter 11 case is venued here, MacGregor engaged in operations and business activities in various jurisdictions, and its creditors are located in various jurisdictions. Furthermore, it is argued the transactions sought to be avoided were closed in New York, so New York is arguably the state in which the cause of action arose.

■ However, two factors contradict Brooks' assertion that New Jersey's interest is negligible: first, MacGregor is a New Jersey domiciliary, with its principal place of business in East Rutherford, New Jersey; second, MacGregor's Chapter 11 bankruptcy petition was filed in New Jersey and this Court has presided over this and other related adversary proceedings for several years. Given those two factors, it is clear that New Jersey has a substantial interest in applying its law to the instant case.

### b. New Jersey's Statute of Limitations

■ New Jersey's six year statute of limitations, pursuant to N.J.S.A. 2A:14–1, applies to breach of fiduciary duty causes of action.[5] New Jersey's statute of limitations is made applicable to the instant case by 11 U.S.C. § 108,[6] which permits a trustee or the debtor to commence any action available to the debtor within the operative nonbankruptcy statute of limitations. The purpose of § 108(a) is to toll the time period within which the prepetition debtor is required to act, in order to enable the trustee to timely take the necessary action so that the estate does not lose the benefit therefrom. Section 108(a) extends any statute of limitation for commencing or continuing an action by the debtor for two years after the date of the order for relief, unless it would expire later.

The MacGregor Board Defendants assert that, regardless of whether New Jersey's six year statute of limitations applies, the instant action was filed more than six years after the causes of action for breach of fiduciary duty accrued. This Court must now determine when the cause of action accrued. In *Montag v. Bergen Bluestone Co.*, 145 N.J.Super. 140, 144, 366 A.2d 1361 (Law Div.1976), the court held that the date on which a cause of action accrues, and hence the date from which the statute of limitations starts to run, is the date upon which the right to institute and maintain suit first arises. *See also Hartford Acc. and Indem. Co. v. Baker*, 208 N.J.Super. 131, 136, 504 A.2d 1250 (Law Div.1985) (for purposes of N.J.S.A. 2A:14–1, date of vesting of right to institute action for fraud was date of last possible fraudulent act).

■ Both parties acknowledge that the question of when a cause of action for breach of fiduciary duty accrues is an open one under New Jersey law. The MacGregor Board Defendants allege that the causes of action for breach of fiduciary duty accrued no later than the dates of the allegedly fraudulent transfers, i.e., April 18, 1988, the closing date of the 1988 Transaction and February 2, 1989, the closing date of the 1989 Transaction. Furthermore, the MacGregor Board Defendants allege that, because the transactions were public and disclosed in documents filed with the SEC and American Stock Exchange, Plaintiffs had actual or constructive knowledge of the alleged breach of fiduciary duty on or about the dates of both transac-

---

5. N.J.S.A. § 2A:14–1 provides:

Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

6. Section 108(a) of the Bankruptcy Code provides:

**Extension of Time.**

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

tions. The Trustees argue that the closing dates of the transactions are not determinative of the date upon which the cause of action accrued. The Trustees assert that all of the executory agreements that were to be performed pursuant to the 1988 Transaction were not "closed" on any one particular date. The Trustees argue that discovery will shed light upon whether the February 1989 transaction was fully "closed" before March 10, 1989, the critical date for determining whether the fiduciary duty claim relative to that transaction was timely commenced within New Jersey's six year statute of limitations. The trustees argue that there exists a genuine issue of material fact as to whether the transaction was fully closed before March 10, 1989, six years before the complaint was filed, such that summary judgment would be inappropriate. The trustees here note that under New Jersey law, the statute of limitations on a cause of action involving fraud does not begin to run until the date of the last possible fraudulent act. *See Hartford Acc. and Indem. Co. v. Baker,* 208 N.J.Super. 131, 135–36, 504 A.2d 1250 (Law Div.1985).

### 3. Equitable Tolling

■ The Trustees also allege that the applicable statute of limitations may have been tolled in the instant case as a result of the conduct of the MacGregor Board Defendants. State common law tolling doctrines are incorporated by 11 U.S.C. § 108 and are, therefore, applicable in bankruptcy proceedings. *Ambrose Branch Coal Co. v. Tankersley,* 106 B.R. 462, 465 (W.D.Va.1989); *see also Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991) (state tolling principles are used by a federal court when it is applying a state limitations period).

#### a. Fraudulent Concealment

■ The Trustees contend that discovery may reveal that the MacGregor Board Defendants engaged in fraudulent concealment of the existence of the cause of action for breach of fiduciary duty. Plaintiffs' Brief

in Opposition, at 22. Fraudulent concealment would result in tolling of the New Jersey statute of limitations. Under New Jersey law, fraudulent concealment is established by a showing that the defendants took actions which concealed the existence of the cause of action, and that the plaintiff, exercising reasonable diligence, would not have discovered the wrong. *Hauptmann v. Wilentz,* 570 F.Supp. 351, 397 (D.N.J.1983), *aff'd,* 770 F.2d 1070 (3d Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *Foodtown v. Sigma Marketing Systems, Inc.,* 518 F.Supp. 485, 488 (D.N.J.1980).

Brooks makes three arguments in response. First, Brooks claims that, by virtue of the public filings announcing the transactions, full disclosure of the details of the transaction were known. Second, Brooks asserts that the fraud claim is not based on any statement made by the MacGregor Board Defendants, but rather, it is based primarily upon a March 24, 1988 letter written by David R. Ravin, Esq., counsel for the Creditors' Committee to all unsecured creditors regarding the 1988 Transaction. That letter states that, as a result of the then contemplated 1988 transaction, MacGregor will be able to make payment of 100% of MacGregor's past due trade payables. Finally, Brooks maintains that that statement was in fact true and that 100% payment was made on past due trade payables out of the proceeds of the 1988 Transaction. *See* Brooks' Reply Memorandum, at 3 (relying on Declaration of J. Harrison Beal, dated Aug. 18, 1995).[7]

■ All of Brooks' arguments require factual determinations which cannot be resolved in the context of a motion to dismiss or motion for summary judgment. Whether the plaintiff had adequate notice of the existence of a cause of action by virtue of the public filing cannot be resolved on motion to dismiss or a motion for summary judgment. The MacGregor Board Defendants point to the SEC filings as conclusive evidence that

---

7. In his declaration, J. Harrison Beals, who is and was in 1988 the Chief Financial Officer and a Director of MacGregor, states that: "To the best of my recollection, all of the past due trade payables of MacGregor that were in existence at the time of the asset sale were paid off out of the proceeds of the asset sale, which took place on April 18, 1988." Declaration, ¶ 4.

plaintiffs were aware of the existence of a cause of action. However, the fact that plaintiffs were aware of the existence of the transaction is not the same as awareness of the alleged fraudulent nature of that transaction, if indeed it was fraudulent. Furthermore, the fact that the Trustees rely on a letter written by counsel for the Creditors' Committee, rather than a statement made by one of the MacGregor Board Defendants, does not preclude the Trustees from demonstrating at trial that the letter contained fraudulent statements for which the MacGregor Board Defendants' are responsible. Finally, the issue of whether those statements were, in fact, fraudulent must be resolved at trial. If, at trial, the court determines that the statute of limitations was tolled, the court would then have to determine how long the Trustees are entitled to the benefits of tolling. But the fact that a statute of limitations is tolled does not mean that it does not exist. Even though the statute of limitations is tolled because of the doctrine of fraudulent concealment, it begins to run as soon as plaintiff, in exercising reasonable diligence knew or should have known of the injury and its causes. *Bohus,* 950 F.2d at 925–26. This determination cannot be made upon a motion to dismiss or a motion for summary judgment. In sum, there exists genuine issues of material fact, which preclude summary judgment.

 In addition, the MacGregor Board Defendants argue that the Trustees have failed to make their allegations of fraud with the particularity required by Rule 9(b), applicable to Bankruptcy Proceedings pursuant to Federal Rule of Bankruptcy Procedure 7009. Keegan's Memorandum of Law in Support of Motion to Dismiss, at 10.

Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The Court of Appeals for the Third Circuit applies a functional and flexible approach to Rule 9(b), "focusing exclusively on its particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegation of fraud.

*Id.,* 742 F.2d at 791; *see also Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir.1992) ("courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.' ") (quoting *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 99–100 (3d Cir.1983)), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989) ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs [citation omitted]. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."); *Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666, 674–75 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989); *In re Midlantic Corp. Shareholder Litig.,* 758 F.Supp. 226, 231 (D.N.J.1990) ("If the pleaded facts and supporting allegations permit the inference of a colorable claim for fraud and afford the defendant notice as to which actions or communications are alleged to have been fraudulent, the complaint will withstand a motion to dismiss."); *Kronfeld v. First Jersey Nat'l Bank,* 638 F.Supp. 1454, 1463–65 (D.N.J.1986). Courts have also noted that, in the bankrupt-

cy context, Rule 9(b) should be interpreted liberally, particularly when the trustee, a third party outsider to the fraudulent transaction, is bringing the action. *In re Hollis & Co.*, 86 B.R. 152, 156 (Bankr.E.D.Ark.1988); *In re O.P.M. Leasing Serv. Inc.*, 32 B.R. 199, 203 (Bankr.S.D.N.Y.1983).

 Rule 9(b) applies to fraudulent conveyance proceedings. *See, e.g., Wieboldt Stores v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill.1988) (finding that Rule 9(b) applies in fraudulent conveyance actions, but it must be read in conjunction with Rule 8 which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."); *O.P.M. Leasing*, 32 B.R. at 203 ("Although it is true that Rule 9(b) 'should be reconciled with Rule 8, which requires a short and plain statement of claims,' ... more than broad assertions by the plaintiff are required.").

The MacGregor Board Defendants also assert that the complaint fails to make any allegations of fraudulent concealment or self-dealing, much less allegations of such conduct set forth with the required specificity. Keegan's Memorandum of Law in Support of Motion to Dismiss, at 10 n. 8; Letter Brief on behalf of Emil Solimine, filed on Sept. 5, 1995, at 4.

 While the complaint does not expressly allege that the Defendants fraudulently concealed the existence of the cause of action, the complaint does allege breaches of fiduciary duty, based on the alleged facts set forth therein. The complaint sufficiently pleads the circumstances of the alleged fraud to survive the instant motions to dismiss and to allow discovery to proceed in this action. The trustees, however, will be directed to amend the complaint within 30 days of the date of this Opinion to plead, the applicability of the equitable tolling doctrine in this matter. *See e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 and n. 10 (3d Cir.1994) (In the context of a Rule 12(b)(6) motion to dismiss all that is required of the plaintiff is that she plead the applicability of the doctrine of equitable tolling).

**b. Adverse Domination**

 The Trustees also allege that the statute of limitations may be tolled by the doctrine of adverse domination. Under this theory, a statute of limitations is tolled as long as a corporate plaintiff is controlled by the alleged wrongdoers. As the court in *Resolution Trust Corp. v. Farmer* explained:

> The doctrine [of adverse domination] is based on the theory that the corporation which can only act through the controlling wrongdoers cannot reasonably be expected to pursue a claim which it has against them until they are no longer in control.

865 F.Supp. 1143, 1151 (E.D.Pa.1994). *See also Republic of the Philippines v. Westinghouse Elec. Corp.*, 714 F.Supp. 1362, 1371 n. 3 (D.N.J.1989) (equitable doctrine of adverse domination "tolls the statute of limitations for a corporation's claims against its officers and directors when those in control of the corporation cannot be expected to pursue claims that would result in their undoing") (citing *IIT v. Cornfeld*, 619 F.2d 909, 929–30 (2d Cir.1980)). The Trustees allege that the MacGregor Board Defendants were in "full, complete and exclusive control" of MacGregor until the appointment of the Trustee on November 3, 1994. Plaintiffs' Brief in Opposition, at 23.

 The MacGregor Board Defendants point out that no New Jersey court has expressly adopted the doctrine of adverse domination. The one New Jersey federal court decision on this issue, *Republic of the Philippines v. Westinghouse Elec. Corp.*, 714 F.Supp. 1362, 1371 n. 3 (D.N.J.1989), did not involve a New Jersey statute of limitations issue and the doctrine was found to be factually inapplicable.

Movants further argue that, even if the theory of adverse domination was recognized by New Jersey courts, the Trustees have failed to make a prima facie showing that adverse domination is applicable in the present case. Movants allege that there is no evidence that the MacGregor Board Directors were "wrongdoers." Furthermore, Movants challenge, as a factual matter, the Trustees' assertion that the MacGregor Board Defendants were in "exclusive control" of the company. The Defendants argue that

since all claims of MacGregor were transferred to MGS pursuant to an agreement approved by this Court on August 3, 1989,[8] the MacGregor Board Defendants were no longer able to control the actions of the corporation in determining whether to bring an action for breach of fiduciary duty against these Defendants.

Furthermore, Movants also point out that Defendants were not in "exclusive control," as approximately 70% of MacGregor stock is owned by shareholders who are not insiders. Brooks' Reply Memorandum, at 4. These shareholders, it is argued, could have brought a derivative suit if the Board failed to take action upon demand. Brooks' Reply Memorandum, at 4; Letter Brief of James F. Keegan, Esq., filed Sept. 5, 1995, at 2 ("Keegan's Letter Brief").

■ Finally, Movants point out that equitable tolling does not necessarily result in an extension of the statute of limitations. Keegan's Letter Brief at 2. Under New Jersey law, if the basis for tolling a statute of limitations ceases and there remains a reasonable period of time before the statute of limitations expires, then suit must be brought before the expiration of the statute of limitations. *Kaprow v. Board of Education of Berkeley Twp.*, 131 N.J. 572, 589–90, 622 A.2d 237 (1993); *Torcon, Inc. v. Alexian Bros. Hosp.*, 205 N.J.Super. 428, 437, 501 A.2d 182 (Ch.Div.1985), *aff'd* 209 N.J.Super. 239, 507 A.2d 289 (App.Div.1986), *certif. denied* 104 N.J. 440, 517 A.2d 431 (1986). As the court in *Kaprow* explained:

> if after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant, there remains a reasonable time under the applicable statute of limitations period to commence a cause of action, the action will be barred if not filed within this remaining time.

131 N.J. 572, 589–90, 622 A.2d 237 (citing *Mosior v. Insurance Co. of N. Am.*, 193 N.J.Super. 190, 197, 473 A.2d 86 (App.Div. 1984)).

Movants assert that the tolling, if any, ceased when the cause of action was sold to MGS in July, 1989. As of July, 1989, there were approximately five years remaining under the New Jersey six year statute of limitations within which this cause of action could have been brought. Keegan's Letter Brief at 2–3.

■ The tolling principles of fraudulent concealment and adverse domination involve questions of fact which cannot be resolved as a matter of law on a motion to dismiss. As the Court in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994) held, tolling issues relative to the statute of limitations involve factual issues which must be determined on a case-by-case basis, and cannot be decided in the context of a motion to dismiss. The issue of whether a statute of limitations has been tolled necessarily requires factual determinations, and therefore, cannot be resolved before discovery has been conducted. The issue of whether the statute of limitations was tolled involves genuine issues as to material fact, thus precluding summary judgment.

### 4. Lack of Discovery

■ The Court finds that the question regarding tolling of the statute of limitations involves factual issues which cannot be resolved in the absence of discovery. The tolling issue cannot be resolved on a motion to dismiss, nor can it be resolved on the basis of affidavits submitted in support of a motion for summary judgment. In *Knight v. E.F. Hutton and Co.*, 750 F.Supp. 1109 (M.D.Fla. 1990), the court held that the issue of whether a statute of limitations was tolled in a particular case generally may not be resolved

---

8. On or about July 14, 1989, the Debtor and MGS entered into an Agreement for Purchase and Sale of Assets pursuant to which the Debtor purported to sell to MGS substantially all of its assets, including its statutory avoidance powers. This sale was approved by this Court by the late Honorable Daniel J. Moore, U.S.B.J. on August 3, 1989. Thereafter, the Debtor and MGS entered into a Settlement Agreement pursuant to which the Debtor and the MGS Trustee each have an interest in the claims and have agreed to share the proceeds derived therefrom in a specified manner. *See* October 24, 1994, Opinion in *Official Unsecured Creditors' Committee of MacGregor Sporting Goods, Inc. v. Riddell Sports, Inc.*, Case No. 89–01973, Adv. No. 93–2214, slip. op. p. 4 n. 2.

on a motion to dismiss. In order to prevail on a motion to dismiss, the movant must show that the plaintiff can prove no set of facts which would toll the statute of limitations. *Id.* at 1112. In *Oshiver*, the court stated that the issue of whether a statute of limitations was tolled involves issues of fact which could not be resolved on the face of the complaint. 38 F.3d at 1391. Simply, pleading the applicability of a tolling doctrine is sufficient to survive a motion to dismiss. *Id.* The applicability of an equitable tolling doctrine may not be determined on the basis of affidavits submitted in support of a motion for summary judgment. *Wilkerson v. Siegfried Ins. Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir.1980). For these reasons, this Court must deny the motions to dismiss Count Three of the Complaint.

### III. Count Four: Breach of Fiduciary Duty by Frederic Brooks

Count Four of the Complaint sets forth a separate claim against MacGregor Board Defendant Frederic H. Brooks for breach of fiduciary duty by Brooks arising from his conduct in negotiating the terms of the February 1989 Transaction on behalf of both MacGregor and Riddell.[9] Brooks has moved to dismiss Count Four on the grounds that it is time barred. Brooks argues that the claim is barred by New Jersey's six year statute of limitations. The 1989 Transaction was closed on February 2, 1989. Brooks reasons that the "negotiation" of that transaction ceased upon closing. Thus, since the claim alleges a breach of fiduciary duty arising from his role in negotiating the 1989 Transaction, the statute of limitations runs from the date negotiations ceased, February 2, 1989. The Trustees brought this claim on March 10, 1995, over six years after the closing date. Brooks

moves to dismiss Count Four on the grounds that it is time barred.

The Trustees allege, however, that Brooks' breach of fiduciary duty was a continuing breach, by virtue of Brooks' equity interest in both MacGregor and Riddell, that extended beyond the time of the transaction itself.

■ For the same reasons applicable to Count Three as set forth above, this Court must deny Brooks' motion to dismiss. Whether Brooks engaged in any conduct which would conceal the right to institute a cause of action against him for his role in negotiating the 1989 Transaction involves genuine issues of material fact which precludes dismissal or summary judgment.

### CONCLUSION

Defendants' Motions to Dismiss Count Three of the Complaint pursuant to Federal Rules of Bankruptcy Procedure 7012 and Federal Rule 12(b)(6) is hereby DENIED. Frederic Brooks' Motion to Dismiss Count Four of the Complaint is hereby DENIED. The trustees will be directed to amend the Complaint within 30 days of the date of this Opinion to plead the applicability of the equitable tolling doctrine in this matter.

An Order shall be submitted in accordance with this Opinion.

---

9. Count Four of the Complaint alleges as follows:
 71. Plaintiffs repeat and incorporate by reference herein, the allegations set forth in paragraphs 1 through 70 of the complaint as if hereafter fully set forth at length.
 72. Brooks owed a fiduciary duty of care, loyalty and good faith to MacGregor, its shareholders and creditors.
 73. Brooks breached his fiduciary duty owing to MacGregor, shareholders and creditors, by negotiating the 1989 Transaction for less than reasonably equivalent value or for less than fair consideration.
 74. Brooks breached his fiduciary duty owing to MacGregor, its shareholders and creditors, by negotiating the 1989 Transaction on behalf of MacGregor while he was also Chairman of the Board, and Chief Executive Officer of Riddell, Inc. and Equilink, and Chief Operating Officer, President and Director of RSI [Riddell Sports, Inc.] and while he maintained an equity interest in both RSI and MacGregor.