In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee of the DBSI Estate Litigation Trust created by operation of the Second Amended Joint Chapter 11 Plan of Liquidation; and Conrad Myers, as Trustee of the DBSI Liquidating Trust created by operation of the Second Amended Joint Chapter 11 Plan of Liquidation, Plaintiffs,

v.

Wavetronix LLC, David V. Arnold, Linda S. Arnold, Michael Jensen, John Does 1–50, and ABC Entities 1–50, Defendants,

Bankruptcy No. 08–12687(PJW).
Adversary No. 10–55963 (PJW).

United States Bankruptcy Court,
D. Delaware.

March 4, 2011.

Bonnie Glantz Fatell, Victoria A. Guilfoyle, Blank Rome LLP, Wilmington, DE, Norman E. Greenspan, Blank Rome LLP, Philadelphia, PA, William Fillmore, Joseph Hepworth, Fillmore Spencer LLC, Provo, UT, for Individual Defendants.

William R. Firth, III, Gibbons P.C., Wilmington, DE, Brian J. McMahon, Anthony M. Gruppuso, Gregory L. Acquaviva, Gibbons P.C., Newark, NJ, to James R. Zazzali, as trustee for the DBSI Estate Litigation Trust, and to Conrad Myers, as trustee for the DBSI Liquidating Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 12.) The movants are defendants David Arnold, Linda Arnold, and Michael Jensen (the "Individual Defendants"). The Complaint was filed by James R. Zazzali and Conrad Myers, as Trustees of the DBSI Estate Litigation Trust and DBSI Liquidating Trust, respectively, (together, "Trustees"), against Wavetronix LLC and the Individual Defendants, as well as unknown individuals and entities denominated John Does 1–50 and ABC Entities 1–50. The 115–page, 747–paragraph Complaint contains 10 counts asserting causes of action against one or more of the Individual Defendants: Counts 1–6 of the Complaint seek to recover allegedly fraudulent conveyances from the Individual Defendants; Count 14 alleges David Arnold breached his personal guaranty to Stellar Technologies LLC; Count 15 alleges breach of fiduciary duties; Count 16 alleges unjust enrichment; and Count 17 alleges breach of the Wavetronix Operating Agreement. For the reasons discussed below, I will grant the motion.

### Background

DBSI, Inc. and certain of its affiliates filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C.

§§ 101 *et seq.*, on November 6, 2008. A plan of liquidation was confirmed on October 26, 2010, resulting in the appointment of Trustees to administer the DBSI Litigation Trust and DBSI Estate Liquidation Trust. As that Confirmation Order sets forth in greater detail, DBSI, Inc. and its affiliates were operated as a single enterprise under the control of a small group of insiders (the "Insiders"). (Case No. 08–12687, Doc. # 5924, ¶ 27.) The DBSI enterprise was involved in three main spheres of business activity: (i) the syndication and sale to investors of tenant-in-common ("TIC") interests in real estate, (ii) the purchase of real estate, and (iii) investment in technology companies. (*Id.* ¶ 25.)

This adversary proceeding concerns this third sphere of activity, which the Complaint describes as involving "a very large and completely unproductive investment of money into emerging technology-oriented companies." (Doc. # 1, ¶ 56.) The Complaint alleges that these investments were structured as loans from Stellar Technologies LLC ("Stellar"), a holding company majority-owned by DBSI Inc. ("DBSI"), and that these unproductive investments benefitted only the DBSI Insiders, who were able to obtain tax advantages therefrom:

> Although the Technology Company investment was neither productive for the DBSI Companies as a whole nor for the Investors whose cash was diverted to pay for them, it was structured in such a way that it facilitated the siphoning off of substantial distributions to the Insiders and the appropriation of significant tax advantages for them that otherwise would have belonged to the DBSI Companies.

(*Id.*, ¶ 57.)

During the four years preceding the petition date, DBSI transferred no less than $10,742,253.58 to Wavetronix LLC ("Wavetronix") through its affiliate DBSI Redemption Reserve ("DRR"), an Idaho general partnership. Wavetronix, an Idaho limited liability corporation, is one of the Technology Companies identified in the Complaint and is a defendant named in the Complaint. (*Id.*, ¶ gg.) Stellar owns approximately 60 percent of Wavetronix and defendants David Arnold ("Arnold") and Michael Jensen ("Jensen") own the remaining 40 percent. Stellar provided the financing for Wavetronix, and Arnold and Jensen supplied the intellectual property and the "technology knowhow." (Doc. # 1, ¶ 414.) Arnold serves as the chairman of the Wavetronix Management Board, manager, president, and CEO. Jensen is a manager and board member. Arnold's wife, Linda, has also served on the board, with the remaining board seats held by various individuals alleged to be DBSI Insiders. (Doc. # 1, ¶¶ 153, 156.)

A central dispute in this adversary proceeding is whether the funds transferred through DRR were capital contributions or loans to Wavetronix. Wavetronix, in a separate proceeding, has filed a complaint seeking a declaratory judgment that the transfers were capital contributions. (Adv.Proc. No. 10–55592.) Trustees allege that these transfers were loans, as memorialized by yearly promissory notes Wavetronix signed for the amounts it received the prior year. Thus, Wavetronix signed a promissory note in 2002 for the amounts it received from DBSI in 2001, a promissory note in 2003 for the amounts received in 2002, and so on. Trustees allege that, even though the transfers came from DRR, these promissory notes were made payable to Stellar. Arnold, as president and CEO, signed these promissory notes every year between 2002–2007. Arnold also personally guaranteed the 2002 and

2003 notes up to his *pro rata* percentage ownership in Wavetronix.

Trustees seek to recover from the Individual Defendants on five separate bases: (i) that the transfers were fraudulent conveyances under both the Bankruptcy Code, 11 U.S.C. § 548, and under Idaho Law, Idaho Code Ann. §§ 55–906, 913(1)(a) & (b), and 55–914(1); (ii) that Arnold breached his personal guaranty of the 2002 and 2003 promissory notes; (iii) that the Individual Defendants breached their fiduciary duties; (iv) that the transfers unjustly enriched Arnold and Jensen; and (v) that Arnold and Jensen breached the Wavetronix Operating Agreement.

The Individual Defendants move to dismiss the Complaint as failing to adequately plead any of these causes of action. They contend that the fraudulent transfers actions merit dismissal because those counts do not identify any transfers made to the Individual Defendants. They contend there can be no claim for breach of the personal guaranty because it had expired. The Individual Defendants assert that there are insufficient facts in the Complaint to support the breach of fiduciary duties and unjust enrichment counts. Finally, they contend that the Wavetronix Operating Agreement specifically precludes the Trustees' breach of contract actions against Arnold and Jensen.

## Standard of Review

In considering the Individual Defendants' motion to dismiss, I must accept the Complaint's factual allegations as true, construe the Complaint in the light most favorable to Trustees, and determine whether, under any reasonable reading of the Complaint, Trustees may be entitled to relief. *Rea v. Federated Investors,* 627 F.3d 937, 940 (3d Cir.2010).

Fed.R.Civ.P. 8(a)(2), made applicable by Fed. R. Bankr.P. 7008, requires that the complaint contain "a short and plain state- ment of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

■ If dismissal of the Complaint is warranted, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Leave to amend may be denied if, *inter alia,* the court determines that amendment would be futile. *Azzata v. American Bedding Industries, Inc. (In re Consolidated Bedding, Inc.),* 432 B.R. 115, 125–26 (Bankr. D.Del.2010).

## Discussion

### Counts 1–6: Fraudulent Transfers

■ Counts 1 through 6 of the Complaint seek to recover from the Individual Defendants the transfers DRR made to Wavetronix as both actually and constructively fraudulent transfers. To plead a fraudulent transfer action, Trustees must "set forth the facts with sufficient particularity to apprise the [Individual Defendants] fairly of the charges made against [them] so that [they] can prepare an adequate answer." *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re Astro-*

*Power Liquidating Trust),* 335 B.R. 309, 333 (Bankr.D.Del.2005).[1] Trustees may put the Individual Defendants on notice by identifying one of the following four factors: the date of the transfer, the amount of the transfer, the name of the transferor, and the name of the transferee. *Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group),* 339 B.R. 570, 575 (Bankr.D.Del.2006).

Exhibit A to the Complaint lists the subject transfers as all being made by DRR to Wavetronix. (Doc. # 1.) Exhibit A does not list any transfers to the Individual Defendants. Counts 1–5 allege that the Individual Defendants were either the "immediate or mediate transferee" of Wavetronix or else the persons for whose benefit the transfers were made. (Doc. # 1, ¶¶ 595, 601, 613, 625, 634.) Count 6 does not contain any allegations concerning the Individual Defendants, instead only referring to the transfers to Wavetronix in Exhibit A. (*Id.,* ¶ 645.) However, Paragraph 648 states that "[a]s of the date hereof, Wavetronix and Arnold have not returned any of the Four Year Transfers to the Debtors' estates," and paragraph 649 requests "judgment against Wavetronix and Arnold in the amount of the value of the Four Year Transfers." (*Id.*)

The Individual Defendants contend these allegations are insufficient to sustain claims for fraudulent transfers because the Complaint fails to identify any transfer by date, amount, transferee, or transferor. (Doc. # 13, pp. 17–18.)

In the Trustees' opposition brief, they state their case as follows:

1. Trustees have alleged that the transfers were both constructively and actually fraudulent. *In re AstroPower Liquidating Trust* applies Rule 8(a)'s pleading standard to a constructively fraudulent transfer claim. To plead a cause of action alleging actual fraud, however, a plaintiff must generally meet the heightened pleading standards of Rule 9(b)— requiring the plaintiff to "state with particu-

Although Exhibit A to the Complaint identified fraudulent transfers made only to Wavetronix ("Fraudulent Transfers"), on information and belief, Arnold improperly and subsequently received portions of the Fraudulent Transfers. In other words, he was the "immediate ... transferee of such initial transferee," 11 U.S.C. § 550(a), and received portions of the Fraudulent Transfers in the form of compensation (*see* Complaint at ¶ 574), and in the payment of legal fees incurred by him personally or by Wavetronix to pursue litigation personal to Arnold, (*see* Complaint at ¶ 575). In addition, Arnold, as manager, president, CEO, and co-founder effectively controlled Wavetronix. As such, Arnold is a proper party from whom to recover under 11 U.S.C. § 550(a).

(Doc. # 19, p. 34.)

I am unpersuaded and troubled by these arguments. First, Trustees' reference to the Complaint as alleging that Arnold received portions of the transfers in the form of compensation (Complaint ¶ 574) and legal fees (Complaint ¶ 575) is seriously misleading. Complaint paragraph 574 reads as follows:

Despite Wavetronix's failure—and Arnold's knowledge of this failure—to make any payments to Stellar under the Promissory Notes, Arnold has continued to receive compensation from Wavetronix.

Complaint paragraph 575 reads as follows:

Arnold has further breached his fiduciary duties to Wavetronix and its mem-

larity the circumstances constituting fraud or mistake," Fed.R.Civ.P. 9(b). This heightened pleading standard, however, is relaxed in bankruptcy, "'particularly when the trustee ... is bringing the action.'" *Pardo v. Gonzaba (In re APF Co.),* 308 B.R. 183, 188 (Bankr. D.Del.2004) (quoting *Levitt v. Riddell (In re MacGregor Sporting Goods, Inc.),* 199 B.R. 502, 514–15 (Bankr.D.N.J.1995)).

bers by utilizing funds belonging to Wavetronix for his own personal purposes, including the payment of legal fees incurred by him personally, not by Wavetronix.

In no way can these two paragraphs be read to say that Arnold received portions of the transfers in the form of compensation or the payment of legal fees. Trustees have pointed to no other provision in the Complaint as providing factual bases that Arnold received any of allegedly fraudulent transfers. Trustees seem to imply that the transfers passed through Wavetronix and into Arnold's pocket. This implication not only lacks support in the Complaint but is refuted by the Complaint, which alleges that the transfers were made to Wavetronix in order to fund its routine business expenses. (Doc. # 1, ¶ 305.)

Trustees' second argument—that they may recover the transfers from Arnold under 11 U.S.C. ¶ 550(a) because Arnold was a manager, president, CEO, and cofounder of Wavetronix—is likewise unavailing. Section 550(a) provides that a fraudulent transfer may be recovered from either "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). The only way to interpret Trustees' contention that Arnold is a proper party based on his control over Wavetronix is that the transfers were made for Arnold's benefit. Trustees, however, have identified no factual allegations in the Complaint supporting this theory. Furthermore, Trustees' description of DBSI's investments in Wavetronix and the other Technology Companies refutes this theory, as the Complaint describes these investments as being made solely for the benefit of the DBSI Insiders. Therefore, Trustees' second argument fails

as unsupported by, and inconsistent with, the Complaint.

Because Trustees have failed to identify any transfers made to the Individual Defendants or for the benefit of the Individual Defendants, the Complaint fails to sufficiently plead fraudulent transfer actions against the Individual Defendants. Even if the Complaint adequately states a claim against Wavetronix, it fails to state a claim upon which relief can be granted against any other or subsequent transferee. I will therefore grant the motion to dismiss without prejudice to the Trustees filing an amended complaint that satisfies pleading requirements.

### Count 14: Breach of Personal Guaranty

Arnold signed a Limited Personal Guaranty for the 2002 and 2003 Promissory Notes. The Guaranty was made "on a 'claims made' basis only, meaning that this Guaranty shall only be effective with respect to claims or demands made under this Guaranty ... while this Guaranty remains in full force and effect and prior to any termination hereof." (Doc. # 1, Ex. C.)

The Guaranty was set to expire on December 31, 2008. On December 30, 2008, Stellar notified Wavetronix that it was in default under the 2002 and 2003 promissory notes. (*Id.*, ¶¶ 445, 470.) That same day, Stellar demanded that Arnold satisfy his Guaranty obligations. (*Id.*, ¶¶ 457, 482.)

Trustees, standing in Stellar's shoes, allege in the Complaint that Arnold breached the Guaranty when he failed to satisfy his obligations.

Arnold disagrees, arguing that Stellar had no right to demand payment under the Guaranty on December 30, 2008, because (i) Wavetronix was not yet in default, as it still had a 10–day grace period within which to pay Stellar and (ii) Stellar had not

yet exhausted its legal remedies against Wavetronix.

Trustees' opposition brief advance two arguments against Arnold's position. First, Trustees contend that the Guaranty only required that Stellar "bookmark" its claim for payment prior the termination date, which it did by demanding payment on December 30, 2008. (Doc. # 19, p. 17.) To support this argument, Trustees rely on the usage of the term "claims made" in the insurance industry. In claims-made insurance policies, the insurer provides coverage for any claims made during the term of the policy, and the insured files a "claim" upon the occurrence of circumstances that could give rise to the insurer's obligations. That is, to "make a claim" is essentially to notify the insurer of its potential liability. Applying that usage here, Trustees argue that Stellar "made a claim" prior to the termination date by notifying Arnold of Wavetronix's default under the notes, which was an occurrence that could give rise to his obligations under the Guaranty. (*Id.*)

Trustees' second argument is that, when Stellar and Wavetronix extended Wavetronix's time to perform under the 2002 and 2003 promissory notes, Arnold's Guaranty was also implicitly extended. (Doc. # 19, p. 18.) The maturity dates for the 2002 and 2003 notes were initially January 1, 2008. The Guaranty, which expired on December 30, 2008, therefore, covered a 1–year period following this maturity date. Trustees contend that the Guaranty's termination date signifies the parties' intent that the Guaranty would cover a 1–year period following the loans' maturity dates. Thus, they argue that when Wavetronix and Stellar extended the maturity dates to September 1, 2008 and September 30, 2008, the Guaranty's termination date was likewise extended. The basis for this ar-

gument is the Guaranty's "non-impairment" provision, which reads as follows:

> At any time and from time to time, without terminating, affecting, or impairing the validity of this Guaranty or the obligations of Arnold hereunder, Stellar may deal with the Company in the same manner and as fully as if this Guaranty did not exist, and shall be entitled, among other things, to grant to the Company such extension or extensions of time to perform, or to waive any duty of the Company to perform, any of the Obligations, as Stellar may deem advisable.

(Doc. # 1, Ex. C.) Trustees argue that "[t]he 'non-impairment' provision preserved that one-year claims period and permitted claims to be made under the Guaranty up to August 31, 2009 for the 2002 Promissory Note and ... September 29, 2009 for the 2003 Promissory Note." (Doc. # 19, p. 18.)

I find both of these arguments unavailing. The Guaranty itself defines what "claims made" means; therefore, there is no basis to incorporate the meaning of "claims made" insurance policies. The Guaranty defines "claims made" in the following language:

> This prorated Guaranty is granted by Arnold to Stellar on a "claims made" basis only, meaning that this Guaranty shall only be effective with respect to claims or demands made under this Guaranty, pertaining to the Obligations, while this Guaranty remains in full force and effect and prior to any termination hereof, and not with respect to any claims arising or asserted after the termination of this Guaranty.

(Doc. # 1, Ex. C.) The Guaranty's third paragraph then sets forth the conditions precedent to Stellar's right to demand payment from Arnold:

If the Company fails to pay, perform, or discharge any of the Obligations when due in accordance with the terms of the Replacement Notes, and such failure shall continue beyond any applicable grace period, and then upon Stellar's exhaustion of all legal remedies Stellar may have against the Company for payment of the same, Arnold, upon demand then made by Stellar, shall pay to Stellar an amount equal to Arnold's prorata share of any outstanding Obligations otherwise required to be paid by the Company under the Replacement Notes.

(*Id.*)

Thus, the Guaranty provides that it covers only demands for payments made on or prior to December 31, 2008, and it provides that no demand for payment can be made until (i) Wavetronix has defaulted on the notes, (ii) the default has extended beyond the grace period, and (iii) Stellar has exhausted its legal remedies against Wavetronix. On December 30, 2008, Stellar notified Wavetronix of its default, but the 10–day grace period had not yet expired and Stellar had not exhausted its legal remedies. Therefore, Stellar had no right to demand payment from Arnold on December 30, 2008. Stellar's demand for payment on that date was ineffective, and the Guaranty expired the next day without any claims having been made during its duration.

■ Trustees' second argument that the termination date had implicitly been extended runs completely contrary to the "non-impairment" provision. That provision states that any changes to the notes made by Stellar would have no impact upon the terms of the Guaranty. Accordingly, Stellar's decision to extend the maturity dates for the notes did not affect the Guaranty's termination date.

Because Stellar did not have the right to demand payment from Arnold before the Guaranty expired on December 31, 2008, Trustees have not, and cannot, state a claim for breach of the Guaranty. I will therefore grant Arnold's motion to dismiss Count 14 with prejudice.

## Count 15: Breach of Fiduciary Duties

■ Count 15 alleges that Arnold, Linda Arnold, and Jensen breached their fiduciary duties as directors, officers, and/or managers of Wavetronix. Paragraphs 699–701 in the Complaint base these allegations on "[t]he above-described actions and omissions by Arnold, Linda Arnold, and Jensen." (Doc. #1.) These "above-described actions and omissions" presumably refer to the 696 paragraphs in the Complaint preceding Count 15. This broad incorporation of such a lengthy Complaint fails to identify any specific prior allegations that could properly fall within a breach of fiduciary duty count. I will grant the motion to dismiss this count because it imposes an improper burden on the Individual Defendants to divine the factual bases for this count.

■ The only allegations for a breach of fiduciary duties count are found in Trustees' opposition brief, concerning Wavetronix's declaratory judgment action against the Trusts:

Even though their case is frivolous and can never be proven, the Individual Defendants have commenced litigation against Stellar anyway, causing Wavetronix and the Trusts to incur thousands of dollars in costs and fees in the process. The Individual Defendants are driven by self-interest. At no cost to them, the Individual Defendants are using Wavetronix's money to advance a theory that could eradicate $23 million in debt by recasting the loans as capital contributions that would not result in a

dilution of their ownership percentages. In other words, the Individual Defendants want the Court to allow them to take the $23 million and not give anything in return.

(Doc. # 19, p. 33.) Even if these allegations could support a claim for breach of fiduciary duty, it is improper for Trustees to raise these allegations for apparently the first time in their opposition brief. I will therefore grant the motion to dismiss this count without prejudice to allow Trustees to file an amended Complaint that specifically identifies the paragraphs in the Complaint that directly support this count.

## Count 16: Unjust Enrichment

Count 16 for unjust enrichment merits dismissal for the same reasons discussed in the above section concerning Count 15's breach of fiduciary duties count. Count 16 alleges that "Wavetronix, Arnold, and Jensen were enriched as a result of Wavetronix's receipt of the Two Year Transfers, the Four Year Transfers, and the funds that were the subject of the Promissory Notes described in this Complaint by receiving something of value that belonged to the Transferor." (Doc. # 1, ¶ 705.)

The Complaint fails to allege facts sufficient to put the Individual Defendants on notice of the bases for this unjust enrichment count. The apparent theory of unjust enrichment, as described in the fiduciary duties section and set forth for the first time in Trustees' opposition brief, is that if the transfers were indeed capital contributions, then Arnold and Jensen were unjustly enriched because these capital contributions increased the value of their ownership interests. Because Arnold and Jensen continued to own 40 percent of Wavetronix even after the "capital contri-

butions," their ownership values increased without any contribution on their part.

Because this theory is no where apparent in the Complaint, I will grant the Individual Defendants' motion to dismiss Count 16 without prejudice so that Trustees may file an amended Complaint.

## Count 17: Breach of Operating Agreement

Count 17 alleges that, if the transfers were capital contributions, then Arnold and Jensen's failure to likewise contribute capital to Wavetronix was a breach of the Operating Agreement. Paragraphs 716–718 of the Complaint set forth the Trustees' theory of recovery.

713. Pursuant to the Operating Agreement, each member of Wavetronix has an obligation to contribute capital in accordance with the member's *pro rata* ownership interest.

714. At no point did Arnold or Jensen contribute capital in the form of cash or other monetary currency to Wavetronix.

715. Thus, Stellar effectively satisfied Arnold's and Jensen's obligations as members to contribute capital to Wavetronix.

716. Assuming, for this Cause of Action, that the Transfers were contributions of capital, then a percentage of each Transfer was made to fund the capital short fall caused by Arnold's and Jensen's failure to satisfy their respective funding obligations as members.

717. Under Section 8.3 of the Operating Agreement, Stellar has the right to treat the funds contributed to Wavetronix, over and above its *pro rata* share, as loans to Arnold and Jensen that are secured by their respective ownership interests in Wavetronix.

718. Accordingly, Stellar has the right to recover from Arnold and Jensen the principal amount plus interest of the loans made to them for purposes of satisfying Arnold's and Jensen's respective obligations to contribute capital to Wavetronix.

(Doc. # 1.)

Count 17 is based on Section 8.3 of the Operating Agreement, which Trustees did not append to the Complaint but which the Individual Defendants have attached as Exhibit 1 to their opening brief. (Doc. # 13.) Section 8.3 concerns the enforcement of members' "Commitments," defined in section 2.15 to mean "the obligation of a Member or Assignee to make a Capital Contribution." (Doc. # 13, Ex. 1.) "Contribution" is defined as "any contribution of Property made by or on behalf of a new or existing Member or Assignee as consideration for a Membership Interest." (*Id.*, § 2.22) A member "who has failed to meet the Commitment of that Member" is a "Delinquent Member." (*Id.*, § 2.26.) Trustees apparently rely on the following language from Section 8.3 concerning how the Wavetronix Management Board may handle a Delinquent Member's unperformed Contributions:

> The Management Board may elect to allow the other Members to contribute the amount of the Commitment in proportion to such Members' Sharing Ratios, with those Members who contribute (Contributing Members) to contribute additional amounts equal to any amount of the Commitment not contributed. The Contributing Members shall be entitled to treat the amounts contributed pursuant to this section as a loan from the Contributing Members bearing interest at the Default Interest Rate secured by the Delinquent Member's interest in the Company.

As the Individual Defendants point out, Section 8.3 goes on to provide that Arnold and Jensen "will never be considered Delinquent Members under this Agreement":

> The parties to this Agreement hereby acknowledge and agree that David Arnold and Michael Jensen have fully performed all Commitments covered by this Section 8.3 and therefore will never be considered Delinquent Members under this Agreement.

This last sentence specifically precludes Trustees' action to recover from Arnold and Jensen as "Delinquent Members" under Section 8.3. Accordingly, I will dismiss Count 17 with prejudice.

### Conclusion

For the foregoing reasons, I will grant the motion to dismiss. Dismissal as to Counts 1–6, 15 and 16 is without prejudice, and I will grant Trustees 30 days in which to file an amended Complaint to correct the problems identified in this opinion.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the Individual Defendants' motion to dismiss the Complaint (Doc. # 12) is **granted,** except that dismissal as to Counts 1–6, 15 and 16 is without prejudice provided that an amended complaint is filed within 30 days.